829 So.2d 676 (2002)
Louis J. CLAY, Jr. a/k/a Louis Clay a/k/a Spoola Boo, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KP-01145-COA.
Court of Appeals of Mississippi.
April 30, 2002.
Rehearing Denied July 30, 2002.
Certiorari Denied October 31, 2002.
*678 Gus Grable Sermos, attorney for appellant.
Office of the Attorney General by Charles W. Maris Jr., attorney for appellee.
Before McMILLIN, C.J., LEE, and BRANTLEY, JJ.
LEE, J., for the court.
¶ 1. In November 1996, Louis Clay was indicted by a Wilkinson County grand jury on count one of aggravated assault in violation of Miss.Code Ann. § 97-3-7 (Rev. 1993), and on count two of illegal possession of a firearm in violation of Miss.Code Ann. § 97-37-1 (Rev.1993). He was subsequently convicted on the aggravated assault charge and sentenced as an habitual offender to serve twenty years in the custody of the Mississippi Department of Corrections without the possibility of parole.
¶ 2. Clay appeals to this Court raising the following issues for our review: his arrest was illegal, an affidavit supporting his charge as an habitual offender was defective, the indictment was defective, he was not given the benefit of an attorney at his initial appearance hearing, he was not afforded a preliminary hearing, the counsel appointed for him was unwanted, his Miranda rights were violated, his due process rights were violated, his right to compulsory process was denied, he was not given an impartial jury, he was denied discovery and opportunity to view exculpatory evidence, he was only afforded limited cross-examination of the State's witness, the evidence was not sufficient to convict, the State's witnesses gave prejudicial testimony, improper jury instructions were given, judicial misconduct should have forced the judge's recusal, he was not afforded a hearing on his habitual status, the double jeopardy rule was violated, and the court reporter erred in failing to make available certain portions of the trial transcript. Finding no merit to any issues raised, we affirm.

FACTS
¶ 3. Joseph McGee and his nephew, Todd McGee, were members of a Wilkinson County hunting club. They both received word in October 1996 that they were being kicked out of the hunting club. On or about October 15, 1996, they attempted to contact the appellant, Louis Clay, who was the president of the club, to get their one-hundred dollar deposits back. Both Joseph and Todd traveled to the club to retrieve their hunting gear, and went to Clay's home for their money, but Clay was not there. They found Clay at the courthouse and discussed arrangements to get their money. Clay told them he did not have their deposit money at that time, but he would have it for them in a few hours. Later that afternoon, Todd returned home to Louisiana and Joseph McGee went to Clay's home at an appointed time and *679 knocked on the door. Upon nearing the home, he heard arguments from inside, so he backed away. A lady came to the door to say that Clay would be out in a moment. Later, Clay came to the door and asked what McGee wanted. McGee replied that he had come for his and his nephew's money, just as the three had agreed to earlier in the day. Clay responded that he did not have any money for him and told him to get off his property. McGee tried to reason with Clay, but Clay then reached inside the door and retrieved a rifle and shot at McGee, hitting him in the leg. McGee hobbled back to his truck and went to the police station where he conveyed his story to the police. The police took McGee to the hospital and he underwent surgery on the wounded area. Thereafter, McGee continued to suffer pain in his leg, and he testified that he incurred approximately $4,800 in medical expenses stemming from the shooting.

DISCUSSION OF THE ISSUES

I. WAS CLAY'S ARREST ILLEGAL?
¶ 4. Clay first argues that his arrest was illegal because the officers lacked probable cause and had failed to secure a warrant prior to the arrest. "In reviewing a magistrate's finding of probable cause, this Court does not make a de novo determination of probable cause, but only determines if there was a substantial basis for the magistrate's determination of probable cause." Petti v. State, 666 So.2d 754, 757-58 (Miss.1995).
¶ 5. Officer Patterson testified that although he arrested Clay without a warrant, he had probable cause to make such arrest since the victim, Joseph McGee, had told him that Clay was the person who shot him. Pursuant to Miss.Code Ann. § 99-3-7 (Rev.2000), this is sufficient information on which to make an arrest:
An officer or private person may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence; or when a person has committed a felony, though not in his presence; or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it; or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. And in all cases of arrests without warrant, the person making such arrest must inform the accused of the object and cause of the arrest, except when he is in the actual commission of the offense, or is arrested on pursuit.
Miss.Code Ann. § 99-3-7(1) (Rev.2000). The victim's identification of Clay as the shooter provided reasonable grounds for the police to suspect Clay had committed the act. Accordingly, we find this first issue to hold no merit.

II. WAS DEPUTY PATTERSON'S AFFIDAVIT ALLEGING CLAY TO BE IN POSSESSION OF A FIREARM DEFECTIVE?
¶ 6. Clay argues that the affidavit Officer Patterson signed was defective because it charged that Clay was a convicted felon in possession of a firearm. However, looking to the conviction, Clay was not convicted nor was he sentenced for possession of a firearm; he was simply convicted on the charge of aggravated assault. Thus, whether or not Officer Patterson's affidavit concerning possession of a firearm was defective is irrelevant. This issue is without merit.

III. WAS CLAY'S INDICTMENT DEFECTIVE?
¶ 7. Clay next argues that his indictment was defective for various reasons. We first look to Uniform Circuit *680 and County Court Rule 7.06 which states the requirements for an indictment:
The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them. An indictment shall also include the following:
1. The name of the accused;
2. The date on which the indictment was filed in court;
3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi;
4. The county and judicial district in which the indictment is brought;
5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;
6. The signature of the foreman of the grand jury issuing it; and
7. The words "against the peace and dignity of the state."
The court on motion of the defendant may strike from the indictment any surplusage, including unnecessary allegations or aliases.
URCCC 7.06 (2001). Clay argues that the indictment fails to state what code section he was charged with violating. We find, though, that the section number is found on page two of the indictment. Clay also claims that the text did not explain whether he was being charged with simple or aggravated assault. Again, on page two the charge of aggravated assault is plainly stated. Clay claims that the judicial district is not included on the face of the indictment, but the first page states that the charge was being brought in the Wilkinson County Circuit Court, which meets the requirement listed in Rule 7.06. Clay claims that the indictment does not state what area of the victim's body was injured, but we find this specificity is not required by Rule 7.06. He claims that he was falsely charged with felonious possession of a firearm which was not factually supported; however, he was not subsequently convicted of such charge so this is of no significance on appeal. He claims that "against the peace and dignity of the State of Mississippi," is omitted from the indictment, when in fact these words do appear at the bottom of page one. He claims that the only witness at the grand jury was Officer Patterson, and he testified merely in the form of hearsay, but we find that the supreme court has allowed hearsay evidence in grand jury proceedings. See State v. Matthews, 218 So.2d 743, 743-44 (Miss.1969). As described, we find that Clay's afore stated contentions set forth in this issue are without merit.
¶ 8. We look in more detail to Clay's argument that the alleged victim is not properly identified. The indictment states such victim is "Joseph McGheee" and also refers to him as "Joseph McGhee;" the correct spelling of the victim's name is "Joseph McGee." Clay argues in his brief that several people live in his community with that name, that these people have sons named after them, and that such misinformation caused trouble in Clay's acquiring the alleged victim's hospital, work and criminal records. Whether or not this actually is the case, we have previously held that such an error is of no consequence.
The rule concerning a variance in the victim's name in an indictment is "an indictment must state the name of the victim of an offense where that is an *681 element of the offense, and a failure to state it, or a material variance between statement and proof is fatal, but an immaterial variance is not." In Hughes [v. State, 207 Miss. 594, 603, 42 So.2d 805, 807 (1949)], the name of the victim in the indictment was "Floyd Griffin," while the actual name of the victim was "Floyd Griffie." This Court held that the variance was immaterial.
Burks v. State, 770 So.2d 960 (¶12) (Miss. 2000). In Burks, the misspelling concerned changing "Tom" to "Tim" and the court said this "change of one letter of the victim's name was also not a material variance on the face of the indictment when the amendment did not alter the criminal charge brought against Burks." Burks, 770 So.2d at (¶10). We find the misspelling in the present case to also not be grounds for reversal. There is no merit to this issue.
IV. WAS THE FAILURE TO PROVIDE CLAY WITH AN ATTORNEY AT THE INITIAL APPEARANCE REVERSIBLE ERROR?
¶ 9. With this issue, Clay argues he was improperly denied counsel at his initial hearing, which he claims is a "critical stage." The records show that Clay was arrested on October 15, 1996, but was not appointed counsel until December 2, 1996. Rule 6.03 of the Uniform Circuit and County Court Rules provides that the judge at the initial appearance shall advise the defendant that he has the right to an attorney. However, the case of Allred v. State, 187 So.2d 28 (Miss.1966), shows that failure to provide such counsel is not grounds in itself for reversal.
¶ 10. In Allred, the defendant was not afforded an attorney until the arraignment, and he argued his constitutional rights were violated as a result.
The mere fact that the defendant did not have an attorney until he was presented for arraignment does not mean that the court must release him. It simply means that where it is later discovered that some undue advantage was taken of the defendant before he had an attorney, he will be granted a new trial, and the evidence wrongfully obtained will not be permitted to be used against him. He will be furnished an attorney to represent him on a new trial.
Allred, 187 So.2d at 32. The Allred court found nothing in the record to indicate that Allred had been taken advantage of or was unduly prejudiced in any way by not having had an attorney present. Id. Similarly, in the present case Clay has failed to show he was taken advantaged, forced to confess, or prejudiced in some other way due to his not having had an attorney at the time of his initial appearance. Thus, we find no error here.
V. WAS THE DENIAL OF A PRELIMINARY HEARING REVERSIBLE ERROR?
¶ 11. Clay next claims that he was improperly denied a right to preliminary hearing. "[O]nce a defendant has been indicted by a grand jury, the right to a preliminary hearing is deemed waived ... `[T]he fundamental purpose of a preliminary hearing is to "determine whether there is probable cause to believe that an offense has been committed and whether the defendant committed it."'" Burns v. State, 729 So.2d 203(¶ 15) (Miss.1998). See also Mayfield v. State, 612 So.2d 1120, 1129 (Miss.1992). Clay argues that he was entitled to such a hearing after his first trial ended in a mistrial to allow him more time for discovery; however, as stated above, he had already been indicted and probable cause was found to exist. Thus, he was not entitled to a preliminary hearing, and we find no merit to this issue.

*682 VI. DID THE TRIAL COURT ERR IN ORDERING COUNSEL TO ASSIST CLAY?
¶ 12. With this issue, Clay argues that the trial judge erred in forcing him to accept appointed counsel at his trial and in failing to grant a continuance to allow Clay to hire his own private attorney. In reviewing the record, we find that Clay requested and received indigent status, entitling him to a court-appointed attorney. However, as described, we also find that Clay developed a pattern of continuous interference with each attorney's ability to effectively represent him, causing the attorneys one by one to withdraw from representing him.
¶ 13. The record shows that Thomas Rosenblatt was initially appointed to represent Clay, but Rosenblatt later filed a motion to withdraw due to Clay's "unwillingness to defer to counsel on matters within counsel's discretion and to cooperate with counsel in the management of this case." The court granted such motion and appointed L.H. Rosenthal to represent Clay. Some point during or after the first trial,[1] Rosenblatt withdrew as counsel and Attorney Robert Hildum undertook representation of Clay and represented him on appeal to the supreme court. During the time Hildum was representing Clay, Clay took it upon himself to file his own motions pro se without his attorney's knowledge or consent. Subsequently, Hildum filed a motion to withdraw as counsel claiming in his motion that Clay constantly ignored his advice and continued to file motions and even a brief without consulting him. Hildum also cited that Clay had filed complaints which were unfounded with the Mississippi Bar regarding his representation. The court allowed Hildum to withdraw, and Gus Sermos was appointed to represent Clay. Sermos continued his representation from the second trial through Clay's filing his notice of appeal to this Court. Sermos filed a motion to withdraw as counsel for the defendant wherein he asked to be released as Clay's attorney after Clay submitted a letter to the Mississippi Bar alleging deficiencies in Sermos's performance. No order is contained in the record which either grants or denies such motion, but both the appellant's and the appellee's briefs include services of process, neither of which include Sermos's name as having been served as counsel of record. Clay's brief was submitted pro se, so we conclude that Sermos was permitted to withdraw as counsel.
¶ 14. Clay claims that the judge erred in denying him a continuance to allow him opportunity to secure his own attorney. The trial judge has broad discretion in granting and refusing continuances. Benton v. State, 766 So.2d 823 (¶ 4) (Miss.Ct.App.2000). Clay claims that he was forced to be represented by attorney Sermos and that Sermos was incompetent, unfamiliar with the case and unwanted. Although Clay argues that he was denied competent counsel at trial, we find no evidence in the record suggesting that Attorney Sermos failed in his efforts to effectively assist Clay in his defense. In fact, the judge insisted that counsel be available at the trial to assist Clay, and the judge gave Clay a great deal of latitude to question witnesses himself, to make his own objections, and generally to represent himself *683 with the safety net of having the appointed counsel at his side should he desire assistance. Clay now claims that he was in the process of hiring an attorney when, on the day of trial, the judge told Clay he was out of time and he would not be allowed a continuance to find his own attorney. The judge noted that Clay made this request for continuance for the first time the day of trial.
¶ 15. In similar cases in which the defendant at the time of trial has requested removal of the court-appointed attorney in exchange for permission to enlist a private attorney, the courts have said such decision to substitute lies in the sound discretion of the court. See Byrd v. State, 522 So.2d 756, 758-59 (Miss.1988); Harrison v. State, 520 So.2d 1352, 1353 (Miss.1987). Having reviewed the history of Clay's difficult attitude and disregard for his appointed attorneys, and having determined that Clay's defense in no way was impaired due to the failure of the trial court to grant his requested continuance, we find no abuse of discretion in the trial court's decision to deny the requested continuance. This issue has no merit.

VII. WERE CLAY'S MIRANDA RIGHTS VIOLATED?
¶ 16. Clay next argues that his Miranda rights were violated. Officer Patterson testified that once he brought Clay to the police station, he read him his Miranda rights, Clay appeared to understand, and Clay signed a waiver of rights form, agreeing to answer questions. At that point, Officer Patterson engaged in a question and answer session. When Officer Patterson told Clay that McGee had been shot and pointed to Clay as the shooter, Clay initially denied any knowledge of the alleged shooting and changed his mind about wanting to talk with the officer. However, later after Officer Patterson explained to Clay that he was being arrested and charged with aggravated assault, Clay volunteered to speak again, this time revising his story and claiming that somebody had tried to shoot him. Clay claims that Officer Patterson never produced any proof of Clay's alleged statement at trial; however, an exhibit was introduced containing Clay's signature which shows Clay waived his rights to have an attorney present. Officer Patterson testified that the voluntary statement was used in questioning Clay, that comments on the form were written by Officer Patterson at the time that he questioned Clay, that the Miranda rights were written on the face of the form, and that Clay's signature was found at the bottom of the form, signifying that he had agreed to waive his rights. When the State moved to enter this document into evidence, Clay voiced no objection, and the form was published to the jury for their review. Considering the jury judged the credibility of the document, finding that the document was sufficiently explained and recognizing that Clay declined to object, we find no merit to Clay's argument that his Miranda rights were violated.

VIII. WERE CLAY'S DUE PROCESS RIGHTS VIOLATED?
¶ 17. Clay next argues that his due process rights were violated. Specifically, he argues he was forced to have unwanted counsel, that he was not allowed adequate time for discovery and to review the records, that several of his motions were not heard in open court, and that Attorney Sermos's statement of expenses was inaccurate. We previously addressed Clay's claim concerning unwanted counsel, but we also note that adequate time for discovery was provided. During the time from Clay's arrest in Oct. 1996 to the trial which is the subject of this appeal, we find from the record that the various attorneys appointed to Clay filed appropriate motions *684 and there exists no evidence that any of Clay's attorneys acted ineffectively in representing him at each's appointed time in the course of this case. Clay contests Attorney Sermos's statement of expenses as being inaccurate; however, we recognize that it is the prerogative of the trial court to review the reasonableness of Sermos's submission of expenses, and absent abuse we will not disturb the trial court's approval of such expenses. Mauck v. Columbus Hotel Co., 741 So.2d 259(¶ 32) (Miss.1999). Thus, we find no evidence of due process violations.

IX. WAS CLAY DENIED HIS RIGHT TO COMPULSORY PROCESS?
¶ 18. Clay argues that the court erred in failing to issue his requested subpoenas and erred in failing to grant a continuance to enable him to locate out of town witnesses. In the record we find Clay's May 26, 2000 request for subpoenas and look to the clerk's docket and find that on June 2, 2000, the subpoenas were returned with service; consequently, we find this claim to be without merit. As well, Clay does not state what persons he wished to subpoena who lived out of town, so he has presented no grounds to find that the trial court erred in denying his requested continuance.

X. WAS CLAY DENIED HIS RIGHT TO AN IMPARTIAL JURY?
¶ 19. Clay contends that he was denied a right to an impartial jury because the prosecutor dismissed potential jurors due to their race. From the record, we are not able to determine the racial makeup of the jury; we also note that the record is void of any objection by Clay concerning alleged violations of the rule from Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Clay makes several allegations but these are not backed up by the record or by other authority. Thus, we are not able to review on appeal any alleged violations in this regard.

XI. WAS CLAY DENIED DISCOVERY OR EXCULPATORY EVIDENCE?
¶ 20. Clay next argues that evidence was withheld from him and that he was not allowed proper discovery. The primary evidence to which Clay claims he was entitled included the pants the victim was wearing the day of the shooting. We find no indication in the record that these pants were ever turned over to any law enforcement official. In fact, testimonies from medical personnel indicate that in this case the pants were probably cut off the victim and disposed of at the hospital. The State also points out that even were the pants available and had the State refused to timely turn them over to Clay for inspection, there is no evidence that the pants would have provided any exculpatory value.
"The State's duty to preserve evidence is `limited to evidence that might be expected to play a significant role in the suspect's defense.'" To play a significant role, "the exculpatory nature and value of the evidence must have been (1) apparent before the evidence was destroyed and (2) of such a nature that the defendant could not obtain comparable evidence by other reasonable means." This constitutional materiality standard is not satisfied by the "mere possibility" that the evidence will help the defense.
Jackson v. State, 766 So.2d 795 (¶ 10) (Miss.Ct.App.2000) (citations omitted). In Clay's case, the police were under no duty to preserve evidence they did not have in their possession, plus Clay fails to state what exculpatory value he thought the pants could offer to his defense. Pursuant to the Jackson rule, we find no error here.
*685 ¶ 21. With this issue Clay also argues that he was denied a copy of his "first trial" which ended in a mistrial. In an order dated June 1, 2000, Judge Johnson noted that the testimonies of the witnesses from the first trial, prior to the mistral being declared, had already been transcribed and were furnished to Clay and to his counsel. The judge notes that a full transcription of the second trial was also furnished to Clay and his counsel. This point is without merit.

XII. WAS CLAY'S RIGHT TO CROSS-EXAMINATION IMPROPERLY RESTRICTED?
¶ 22. With this issue Clay argues that the trial court improperly limited his cross-examination of Joseph McGee, the victim. The record of McGee's testimony shows that Clay was given extensive leeway in cross-examining McGee. Clay argues that McGee's and Dr. Field's testimonies contradicted one another and that Clay should have been given an opportunity to examine this discrepancy. Namely, Clay contests Dr. Field's recitation as to a description of the wound, and Clay argues that he should have been given an opportunity to examine the wound and to take an actual measurement of the wound. During direct examination, McGee was asked to drop his pants and show the jury the scar on his leg from the gunshot wound (he wore short pants underneath in preparation for this display). When Clay cross-examined McGee he again asked if McGee could show the scar to the jury. The court ruled that the injury had already been demonstrated to the jury, and that the jury is the finder of fact and they can make their own conclusions about the size and appearance of the wound. We recognize that trial courts have discretion to restrict cross-examination subject to an abuse of discretion standard. Fields v. State, 758 So.2d 440(¶ 7) (Miss.Ct.App. 1999). We find no abuse in the trial court's failure to require McGee to show his wound for a second time to the jury at Clay's request. This issue is without merit.

XIII. WAS THE EVIDENCE SUFFICIENT TO SUPPORT THE GUILTY VERDICT?
¶ 23. Clay next argues that the evidence was not sufficient to support his conviction. He claims that the only incriminating evidence was the statement of the victim, Joseph McGee, pointing to Clay as the shooter. When reviewing challenges to the sufficiency of the evidence, we consider all of the evidence, as to each element of the offense, in the light most favorable to the verdict. Johnson v. State, 749 So.2d 1251(¶ 7) (Miss.Ct.App.1999). We will reverse only where, with respect to an element of the offense charged, the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty. Id.
¶ 24. The evidence here conclusively favored the verdict. McGee and his nephew both testified to the circumstances which led to McGee's fateful meeting with Clay. McGee also testified with certainty that Clay was the man who shot him, and Dr. Fields testified that metal fragments were recovered from the wound in McGee's leg. Clay's arguments focus on evidence which was not presented to the jury. Nonetheless, pursuant to our standard, we look to the evidence in a light favorable to the verdict and find that reasonable and fair-minded jurors could have found Clay guilty based on the evidence presented. Thus, this issue is without merit.

XIV. WERE THE STATE'S WITNESSES AND THE PROSECUTOR PREJUDICED TOWARDS CLAY?
*686 ¶ 25. With this issue, Clay essentially objects to the testimony of Dr. Fields. The record shows that Clay was given the victim's medical reports during discovery and full access to the doctors' reports which detailed each doctor's involvement in treating the victim. Dr. Fields was subpoenaed close to the date of trial, but this did not result in surprise to Clay as could impede his ability to examine the witness, since the substantive information Dr. Fields would testify to was presented to Clay during discovery. Additionally, the court took into consideration the late notice of Dr. Fields's subpoena and prohibited any type of expert testimony or speculation as to matters which could surprise Clay, allowing only general testimony concerning what treatment the doctor gave the victim, if any. We find no prejudice or abuse with the court's decision to allow Dr. Fields's testimony.

XV. WAS THE JURY IMPROPERLY INSTRUCTED?
¶ 26. Clay argues that the State's instruction S-1 was improper because it failed to include statutory language concerning the charge of aggravated assault.
¶ 27. First, we look to pertinent parts of the statute concerning aggravated assault:
(2) A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm....
Miss.Code Ann. § 97-3-7 (Rev.2000). The jury instruction to which Clay now objects read:
The Defendant, LOUIS CLAY, JR., has been charged with the Crime of Aggravated Assault. If you find from the evidence in this case beyond a reasonable doubt that:
1. the defendant, LOUIS CLAY, JR., on or about October 15, 1996, in Wilkinson County, Mississippi,
2. purposely or knowingly caused bodily injury to Joseph McGhee [sic]
3. by shooting and wounding said Joseph McGhee [sic] with a firearm, and
4. said firearm was a deadly weapon, and
5. LOUIS CLAY, JR., was not acting in self-defense
then you shall find the defendant, LOUIS CLAY, JR., guilty of the Crime of Aggravated Assault. If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty of Aggravated Assault.
Clay argues that the instruction does not comport with the above-cited statute, specifically that the jury was not instructed to find that McGee suffered "serious" bodily injury, which he reads the statute to require. The statute does not say this, but rather holds that a showing of serious bodily injury is not required where the assault is committed with a deadly weapon, which was the case here. We find no error with this issue.

XVI. DID THE TRIAL COURT ERR IN FAILING TO RECUSE?
¶ 28. Clay argues that the trial judge erred in failing to recuse himself. Clay cites numerous reasons including the judge's failure to promptly return Clay to the county after the first reversal of his case, the judge's failure to permit Clay to be brought before the court, that Clay was appointed unwanted counsel, that Clay was not allowed time to properly prepare for *687 trial, and that various motions filed by Clay were denied without a hearing, among other things. Clay found fault with virtually every adverse ruling or action taken against him and consequently asked the trial judge to recuse himself. However, one party's irritation at the trial judge's ruling against him is not grounds to force the judge to recuse himself. Canon 3(c)(1)(a) of the Code of Judicial Conduct states, "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: (a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding...." Additionally, the supreme court has stated:
"A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." However, the presumption is "that a judge, sworn to administer impartial justice, is qualified and unbiased. To overcome the presumption, the evidence must produce a `reasonable doubt' (about the validity of the presumption)." When a judge is not disqualified under the constitutional or statutory provisions, "the propriety of his or her sitting is a question to be decided by the judge, and on review, the standard is manifest abuse of discretion."
Farmer v. State, 770 So.2d 953 (¶ 6) (Miss. 2000) (citations omitted). Clay has provided no evidence of any bias shown by Judge Johnson. To the contrary, Judge Johnson made extensive concessions to allow Clay leeway in representing himself with the assistance of counsel and in assisting Clay as he made numerous motions on his own behalf. We cannot find that a reasonable juror could question the judge's impartiality. Thus, we find no abuse of discretion.

XVII. WAS CLAY PROPERLY SENTENCED AS AN HABITUAL OFFENDER?
¶ 29. Clay argues that with his first appeal to the supreme court, he proved the State had failed to prove beyond a reasonable doubt his status as an habitual offender. See Clay v. State, 757 So.2d 236 (Miss.2000). However, the two issues discussed with that case concerned only (1) whether Clay was denied his due process rights when on the day of trial the court stripped Clay of his indigent status and allowed his attorney to withdraw, and (2) whether Clay's decision to proceed pro se was free and voluntary where as a result of the trial court's rulings Clay was faced with the choice of going to trial without counsel or going to jail. Clay, 757 So.2d at (¶ 11). Thus, Clay's argument that double jeopardy has occurred in the State's finding him an habitual offender fails.

XVIII. WAS THE DOUBLE JEOPARDY RULE VIOLATED?
¶ 30. Clay's first trial in 1997 resulted in a mistrial before a verdict was returned, based on the trial court's finding that a juror had been improperly contacted during the trial. A subsequent trial resulted in conviction, which the supreme court overturned due to the trial judge's abuse of discretion. See Clay v. State, 757 So.2d at (¶¶ 29-30). Clay now argues that the mistrial was improperly granted against his wishes; thus, he should not have been tried again for the same offense, as this would violate double jeopardy rules.
¶ 31. Prior to the most recent trial, Clay filed a pre-trial motion to dismiss based in part on this same claim of double jeopardy violations. In denying the motion the trial court found it was uncontradicted that the first trial ended in a mistrial based on motion by the defendant, by and through counsel, with the defendant *688 present. No record of Clay's opposition to his attorney's requesting such motion is recorded for our review. As well, we find no indication in Clay's appeal to the supreme court that Clay raised that issue on appeal to the supreme court; thus, he has not preserved this issue for review.

XIX. DID THE TRIAL COURT FAIL TO PROVIDE CLAY WITH TRANSCRIPTS OF PRIOR PROCEEDINGS?
¶ 32. Clay finally argues that a Wilkinson County court reporter failed to provide him with portions of his 1997 trial transcript which acted to prejudice him in preparing a defense. Clay raised this issue in his pre-trial motion to dismiss, and the trial judge noted:
The defendant moved the Court to order the transcription of the first trial, prior to the start of the scheduled trial on June 12, 2000. The Court noted that the court reporter who took the first trial had since moved from the State of Mississippi. It was disclosed during the course of the hearings that the testimony of the witnesses from the first trial, prior to the mistrial being declared, had already been transcribed and were furnished to the defendant and his counsel. A full transcription of the second trial was also furnished to the defendant and counsel. The Court denied this motion.
We note the trial court's finding that Clay was provided with the requested information, and we find no merit to Clay's argument on this point.
¶ 33. THE JUDGMENT OF THE WILKINSON COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE AS AN HABITUAL OFFENDER TO SERVE TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO WILKINSON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] Jury selection for the initial trial began on October 8, 1997, but a mistrial was declared prior to the jury being selected. Trial was reset for October 16, 1997, and the jury returned a guilty verdict on the charge of aggravated assault. Clay appealed his conviction to the Mississippi Supreme Court, who reversed and remanded for a new trial due to the trial judge's abuse of discretion. The subsequent trial resulted in a conviction, and this appeal arises from that conviction.