## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1999-KA-01382-SCT

*BONNIE RICHARDS BURKS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/17/1999 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/09/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/30/2000 |

### BEFORE PITTMAN, P.J., McRAE AND SMITH, JJ.

### McRAE, JUSTICE, FOR THE COURT:

¶1. From a conviction of grand larceny and a five (5) year sentence in the Newton County Circuit Court, Bonnie Richards Burks ("Burks") brings this appeal before this Court, asserting two issues: 1) the indictment failed to correctly state the name of the victim, and 2) the court failed to suppress the testimony of witnesses concerning a pretrial photograph identification.

¶2. Finding no reversible error, this Court affirms the judgment of the circuit court.

### I.

¶3. On October 30, 1999, Tim Seese ("Seese") was an employee of Sims Distributing in Walnut Grove, Mississippi. Seese worked for Grady Sims ("Sims"), and his job was to put Tom's Snacks into Sims's vending machines. Around 11 a.m. on October 30, 1999, Seese was accounting for his stock inside Laird Hospital when an estimated $500-$600 was taken from his delivery van.

¶4. Two hospital employees, Sherry Whinery ("Whinery") and Faye Walker ("Walker"), entered the parking lot area after work and noticed a red car speeding into the parking lot. The two ladies, who were 10 to 20 feet away from the car, noticed it had pulled behind a Tom's truck. The driver of the car was not wearing a hat or a hood, and the driver's side window was rolled down. Whinery described the weather conditions that day as "sun-shining." When Whinery and Walker reached the back of the Tom's truck, they saw a man jump from the back with money bags, get in on the passenger side of the red car, and then the

car sped away.

¶5. Whinery and Walker went back into the hospital to phone the police. Later that day, both the witnesses were taken to the police department in Meridian and were asked to view photographs in order to identify the accused. While there, they participated in a photograph identification. Although Whinery and Walker viewed these photographs together, there was not a significant amount of communication between the two. The most that was said between the two witnesses at this time was a phrase such as "that's the driver," while the other responded immediately, almost in unison, with a phrase such as "yes, it's the driver," or "that's him." The two witnesses disagreed as to who uttered the first statement and who uttered the agreeing statement. However, both witnesses indicate they identified the accused almost simultaneously.

¶6. The witnesses were shown six photographs with both of the suspects included in the six photographs. The photographs were laid randomly on a table for the two witnesses, and they were not in a stack or in a straight line. Whinery and Walker identified Burks at this time.

¶7. Whinery and Walker later identified the two in a subsequent jury trial. Whinery stated that her in-court identification was based strictly on what she had seen at Laird Hospital approximately two hours before her photograph identification. Upon being examined by the trial court, Walker also stated that her courtroom identification was not dependent upon her photograph identification. In court, the witnesses described Burks as a thin black male, dark-skinned, with short, dark hair. Walker stated, "when I saw his face on the picture, I was sure that was him." Walker also stated that the driver was "looking straight at us and we (the witnesses) stood there and looked straight back at him, in his face. We got a really good look at his face." In addition, Whinery stated "the whole time he was driving into the parking lot, we were looking at him...."

## II.

### A. THE VARIANCE BETWEEN THE LANGUAGE OF THE INDICTMENT AND THE PROOF AT TRIAL DID NOT MAKE THE INDICTMENT FATALLY DEFECTIVE.

¶8. The indictment in this case states the defendants "did willfully, unlawfully, and feloniously take, steal and carry away from Tom Seese, an employee of Grady Sims, doing business as Sims Distributing Company, over Two-Hundred and Fifty Dollars ($250.00) in cash money...of the personal property of Grady Sims."

¶9. The variance Burks alleges is that the money was not taken or stolen from Tom Seese, as the indictment states, but was instead taken from Seese's employer, Grady Sims, who owns Sims Distributing Company. It is undisputed that Seese was an employee of Sims on October 30, 1999, and that the money did belong to Sims. The failure to make the clarification as to whether the money in question belonged to Seese or Sims did not change the elements of the crime for which Burks was indicted. As Sims's employee, Seese had an obligation to account for the money from the vending machines. Since Seese was responsible for the money, whether the indictment clarified that the money belonged to Sims is not a material change in the indictment.

¶10. At the close of the State's evidence, the State made a motion to amend the indictment to change the name of "Tom Seese" to "Tim Seese." The change of one letter of the victim's name was also not a material variance on the face of the indictment when the amendment did not alter the criminal charge brought against Burks. Any errors complained of in the indictment above are matters of form and not of substance, and therefore the indictment is not fatally defective.

¶11. Miss. Code Ann. § 99-17-13 states that if there is a variance between a statement in the indictment

and the evidence offered in proof, then the trial court may order the amendment changed if it finds that the variance is not material. Miss. Code Ann. § 99-17-13 (1972 & Supp. 1999). *See* **Hannah v. State**, 336 So. 2d 1317, 1321 (Miss. 1976).

¶12. The rule concerning a variance in the victim's name in an indictment is "an indictment must state the name of the victim of an offense where that is an element of the offense, and a failure to state it, or a material variance between statement and proof is fatal, but an immaterial variance is not." **Hughes v. State**, 207 Miss. 594, 603, 42 So. 2d 805, 807 (1949). In **Hughes**, the name of the victim in the indictment was "Floyd Griffin," while the actual name of the victim was "Floyd Griffie." This Court held that the variance was immaterial. *Id.*

¶13. Not every variance between the language of the indictment and the proof is material. A variance is material if it affects the substantive rights of the defendant. **Upshaw v. State**, 350 So. 2d 1358, 1362 (Miss. 1977) (citing **Roney v. State**, 153 Miss. 290, 297, 120 So. 445, 446 (1929)).

¶14. The fact that Seese was actually an employee of Sims and of Sims Distributing Company hardly matters. Seese was responsible to his employer to account for the money from the machines. Therefore, Seese's losses are the losses of his employer. This assignment of error, therefore, is without merit.

### B. WHETHER THE TRIAL COURT ERRED BY NOT SUPPRESSING THE IN-COURT IDENTIFICATION TESTIMONY OF WITNESSES WHEN THEY HAD PARTICIPATED IN A PRETRIAL PHOTOGRAPH IDENTIFICATION.

¶15. The joint, pretrial identification made in the present case did not taint the witnesses' subsequent courtroom identifications because the witnesses demonstrated clear and certain accounts of the events they observed and were not substantially biased by the pretrial photograph identification when viewed under the totality of the circumstances.

¶16. Joint identification as a form of pretrial identification to identify alleged defendants can have serious procedural dangers. Pretrial photograph identifications have been generally upheld if the witnesses view the photographs separately and if there is no emphasis placed on certain photographs as opposed to others. *Simmons v. United States*, 390 U.S. 377, 383, 88 S. Ct. 967, 971, 19 L. Ed.2d 1247, 1252 (1968).

¶17. A Georgia appellate court case, **Kinsey v. State**, 464 S.E. 2d 648 (Ga. Ct. App. 1995), reviewed a situation very similar to the one in the present case. **Kinsey** involved a joint, pretrial photograph identification, where two witnesses were in each other's presence when the identification was made, and each witness also subsequently made a courtroom identification of the defendant in that case. *Id.* at 650. The **Kinsey** court stated that there is no indication that either witness relied upon the other's identification of the defendant. Both witnesses "closely observed Kinsey for five to ten minutes during the robbery," and both witnesses "unequivocally identified" the defendant approximately ten days after the robbery. *Id.* at 651. The court stated that based on the "totality of the circumstances," there was not a substantial likelihood of misidentification. In the present case, the two witnesses were allowed to view a photograph lineup together and were instructed to identify the alleged thieves. The two witnesses were <u>not</u> instructed to keep their selections private and not to converse with each other. In addition, privacy of selection in a pretrial photograph identification is substantially more difficult when the parties are viewing the photographs together. This should not occur; however, under the totality of the circumstances, the identification was not error since both witnesses testified from first-hand knowledge of actually seeing the defendant and not the

photographs.

¶18. Because of the severe due process violations that could occur when witnesses are not allowed to independently and privately identify defendants, it is important to note that the joint identification allowed by the law enforcement officials in the present case could be a very dangerous procedure to adopt. The likelihood and pressure to agree with another witness in a joint identification is tremendous. The fault of the law enforcement officials in the present case is at best harmless error. The totality of the circumstances surrounding the pretrial photograph identification must be considered, and therefore, the trial court did not err by not suppressing the testimony of witnesses Whinery and Walker.

¶19. As this Court has stated, "even an impermissibly suggestive pre-trial identification does not preclude in-court identification by an eyewitness who viewed the suspect at the procedure 'unless: 1) From the totality of the circumstances surrounding it, 2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of a misidentification.'" *Minnick v. State*, 551 So. 2d 77, 91 (Miss. 1989) (citing *York v. State*, 413 So. 2d 1372, 1383 (Miss. 1982) (citing *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) and *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)), *rev'd on other grounds,* 498 U.S. 146, 11 S. Ct. 486, 112 L. Ed. 2d 489 (1990) . Based on the current state of the law in Mississippi and as decided by the Supreme Court, Mississippi must use a combination of the standards set forth in the two above cases.

¶20. *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 410 (1972), concludes that the standard from *Simmons* minus the word "irreparable" is a sufficient standard for the admissibility of the out-of-court statement alone (not just applicable as the standard for admissibility of an in-court identification following an out-of-court identification).

¶21. The *Biggers* case sets out five standards to be followed in determining the likelihood of misidentification under the totality of the circumstances. These five factors are as follows:

> 1) the opportunity of the witness to view the criminal at the time of the crime;
>
> 2) the witness's degree of attention;
>
> 3) the accuracy of the witness's prior description of the criminal;
>
> 4) the level of certainty demonstrated by the witness at the confrontation; and
>
> 5) the length of time between the crime and the confrontation

*Id.* at 199-200.

¶22. Essentially, the five *Biggers* factors are to be considered in determining the admissibility of witnesses' testimony in the present case.

1. the opportunity of the witness to view the criminal at the time of the crime

¶23. In the present case, the two witnesses were no more than 10 to 20 feet away from the driver at the time of the crime. Both witnesses testified that the driver's side window was down, and he wore no hats or hoods. Whinery stated the sun was shining. In addition, both witnesses stopped at the end of the truck, "even with the backdoor" of the truck, when the incident took place.

2. the witness's degree of attention

¶24. Walker stated her attention was drawn to the red car because of the speed with which it was driven into the parking lot. She also stated on cross-examination that the driver (appellant) was "looking straight at us and we stood there and looked straight back at him, in his face. We got a really good look at his face." In addition, Whinery stated, "the whole time he was driving into the parking lot, we were looking at him...."

3. the accuracy of the witness's prior description of the criminal

¶25. Both of the witnesses had similar descriptions of Burks which were that he was a thin, black male with short, dark hair. Whinery also added that the accused in question had a thin face and was dark-skinned.

4. the level of certainty demonstrated by the witness at the confrontation

¶26. This factor can be supported by the quotes of the witnesses above in factors # 1 and #2. Whinery also stated that she did not have any trouble recognizing the defendant from the photographs and that she was sure she was correct when she saw the photograph. Walker made a similar statement and stated, "when I saw his face on the picture, I was sure that was him."

5. the length of time between the crime and the confrontation

¶27. Both witnesses agreed that the time between the incident and the pretrial photograph identification was approximately two hours. This is not a significant amount of time by which to render the witnesses' testimony unreliable or inadmissible.

¶28. The five factors above are factors *Biggers* and *York* have set forth for determining the admissibility and reliability of pretrial identification testimony. The facts of this case and statements by the two witnesses satisfy these five factors.

¶29. To state that the witnesses' in-court identifications were tainted by their pretrial photograph identifications, despite the deficiencies of said identification, would be to refute their testimony. The testimony of both witnesses was not refuted on cross examination.

¶30. It should be noted that this Court has strong objection to the use of joint pretrial identifications where witnesses are allowed to speak to one another and confer about their selections. This is definitely not a satisfactory method of pretrial identification. However, in limiting its decision to the facts of this case, this Court cannot reverse Burks's conviction. In consideration of the totality of the circumstances, the pretrial photograph identification used in this case was not so unnecessarily suggestive and conducive to irreparable mistaken identification.

### III.

¶31. For these reasons, the judgment of the Newton County Circuit Court is affirmed.

¶32. **CONVICTION OF GRAND LARCENY AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

> **PRATHER, C.J., PITTMAN AND BANKS, P.JJ., SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR.**