831 So.2d 580 (2002)
Chad L. HERRINGTON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01598-COA.
Court of Appeals of Mississippi.
November 26, 2002.
*581 William E. Phillips, Laurel, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before SOUTHWICK, P.J., BRIDGES and MYERS, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. Chad Herrington was convicted of grand larceny by the Jones County Circuit Court. On appeal, Herrington alleges that his identification as the culprit was tainted and as a result his conviction was against the substantial weight of the evidence. We disagree and affirm.

FACTS
¶ 2. There was evidence presented to support the following understanding of events. Mr. and Mrs. Franklin Stringer were in their Ellisville home in February 1999, when a young man knocked on the door, identified himself as "Chad," and asked to speak with Mr. Stringer on an important matter. Franklin Stringer, recovering from an accident, was in the couple's bedroom. Mrs. Stringer escorted Chad to the bedroom and left the room.
¶ 3. Chad requested a $50 loan, which Mr. Stringer granted. Mr. Stringer directed Chad to retrieve his wallet and remove the cash. After doing so, Chad hugged Mr. Stringer, promised to repay the money the following week, then appeared to return the wallet to its previous location.
*582 ¶ 4. Some time later that day, the Stringers were unable to locate the wallet, which contained over $1000 in cash. After a search of the bedroom, Mrs. Stringer called police and reported the wallet and cash stolen. The Stringers gave a description of Chad to the police. Approximately two weeks later, the Stringers were asked to attend a line-up at the police station. The Stringers were also asked to identify the defendant from a photo array of five individuals as well as from a group photo of the same five men. Both Mr. and Mrs. Stringer identified Chad Herrington as the man who had entered their home and asked to borrow money.
¶ 5. The Stringers also each made in-court identifications of Herrington. Mr. Stringer testified that Herrington had been the man numbered "five" in the line-up. However, the photograph selected by Mr. Stringer was that of number four, Chad Herrington. At trial, Mr. Stringer continued to refer to the number five position at the line-up while pointing to Herrington's photograph.
¶ 6. Herrington objected to admission of the individual photos, claiming the disparity between Mr. Stringer's referring to individual number five while pointing to a photo number four made the identification equivocal. The trial court overruled the objection and admitted the photographs into evidence. Herrington was thereafter convicted of grand larceny and sentenced to five years imprisonment and restitution.

DISCUSSION

A. Sufficiency of evidence
¶ 7. Herrington argues that both of the Stringers' identifications should have been excluded. The argument is that the pretrial identification procedure was inherently tainted because the Stringers viewed the suspects and made their identifications while in each other's presence. Herrington also alleges a fatal inconsistency in that the Stringers at trial stated that the man who came to their home identified himself as Chad Herrington, while police testimony indicated that the Stringers had initially only used the first name of "Chad" when providing a description.
¶ 8. Unless we find that clear error occurred when a trial court allowed identification testimony, we will not reverse. McDowell v. State, 807 So.2d 413, 419 (Miss.2001). The United States Supreme Court outlined the factors to be considered in determining whether an identification comports with due process. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). These are the factors:
(1) the opportunity of the witness to view the criminal at the time of the crime;
(2) the witness' degree of attention;
(3) the accuracy of the witness' prior description of the criminal;
(4) the level of certainty demonstrated by the witness at the confrontation;
(5) the length of time between the crime and the confrontation.
Id. at 199-200, 93 S.Ct. 375. These factors are to be considered under the totality of the circumstance. Id. at 199, 93 S.Ct. 375.

(1) The opportunity of the witness to view the criminal at the time of the crime.
¶ 9. Herrington asserts that Mrs. Stringer's exposure to the perpetrator was too brief and Mr. Stringer's statement that the man in his bedroom looked familiar are insufficient to satisfy this factor.
¶ 10. Identifications have been upheld even though the opportunity to observe the criminal lasted only a few seconds or minutes. Horne v. State, 825 So.2d 627 (¶¶ 35 & 41) (Miss.2002); Burks v. State, *583 770 So.2d 960, 961 (Miss.2000). Mrs. Stringer observed the defendant for considerably longer than a few seconds, although not for an especially lengthy period. She greeted him at the door, had a brief conversation and escorted him to another room. We do not find any fatal brevity here.
¶ 11. As to Mr. Stringer's statement that the man looked familiar, it is clear that Mr. Stringer was referring to his belief on the morning of the robbery that he knew the man standing in the bedroom.
Q: Okay. Now, getting back to Mr. Herrington, or the individual that came to your house because you did not know who he was at that time?
A: Well, I thought I did.
Q: Okay. Who did you think it was?
A: I thought it was the boyI go riding through the junior college campus all the time and the warehouse is right there to me where they all check in and out every day. And he looked like one of the boys that was there. And I thought, really, that's who it was.
¶ 12. Mr. Stringer had a conversation with Herrington with only a few feet between them and Herrington hugged Mr. Stringer. Mr. Stringer had sufficient opportunity to view the defendant at the time of the crime.

(2) The witness' degree of attention.
¶ 13. Both Mr. and Mrs. Stringer had face-to-face conversations with Herrington. There is no indication that either of them was distracted or had turned their attention elsewhere. To the contrary, Mrs. Stringer testified that her interest in the stranger at her door was sufficient to go to a kitchen window to see what sort of vehicle he drove. The Stringers were obviously paying attention to the man in their home, supporting a finding of sufficient evidence for this factor.

(3) The accuracy of the witness' prior description of the criminal.
¶ 14. Because the police report filed by the Stringers was not made part of the record to this court, we cannot review the description that they then gave. However, Captain Robert Russell of the Ellisville police, who took the report, testified that the Stringers described the suspected thief as a white male, approximately six feet tall with a light moustache who called himself Chad. Additionally, at various points in his trial testimony, Mr. Stringer added that the man in his room was "slick shaven" and long-haired.
¶ 15. There are no absolutes as to the degree of detail necessary for a physical description to be considered adequate. It is sufficient to note that the appellant does not challenge the accuracy of the description the Stringers provided, merely its lack of detail. If discrepancies in the description and the defendant's actual appearance exist, there may arise an inference of misidentification. With no such discrepancies asserted by Herrington, we find that the description was accurate.

(4) The level of certainty demonstrated by the witness at the confrontation.
¶ 16. Both of the Stringers selected Herrington from the line-up and expressed certainty over the identification. This certainty was repeated at the trial when each witness identified Herrington in court. Mr. Stringer was clearly confused as to the numbering in the line-up. The transcript also indicates that he approached his initial identification with caution because of changes in Herrington's physical appearance. However, Mr. Stringer did identify Herrington and has not wavered from that identification.
*584 ¶ 17. As to the alleged inconsistences of Mr. Stringer's identification, the confusion was played out in front of the jury. Because such inconsistencies are matters of credibility and weight to be given particular testimony, the jury is left to make the necessary factual determination as to the value of the testimony. Kimbrough v. State, 379 So.2d 934, 936 (Miss.1980). The same may be said for the asserted conflict in testimony between the Stringers' testimony that the suspect gave his full name to them and the police testimony that only a first name was given.

(5) The length of time between the crime and the confrontation.
¶ 18. Herrington asserts that the two-week period between the crime and the line-up was significant enough to render the eyewitness testimony unreliable and inadmissible. We note that the length of time between the crime and the identification in the case upon which Herrington relies, Neil v. Biggers, was several months. Neil, 409 U.S. at 194-95, 93 S.Ct. 375. Two weeks is well within that period of time. No inordinate delay occurred.
¶ 19. The final component of this argument is that the out-of-court identification by the Stringers is tainted because they were together when making the identification. The supreme court has strongly denounced joint pre-trial identifications which allow witnesses to speak and confer about their choices. Burks, 770 So.2d at 963-64. However strong the objection to such a practice, the court did not create a rule that joint identifications are per se inadmissible. Rather, the court reviewed the identifications in Burks under the totality of the circumstances, found the procedural errors to be harmless and admitted them. Id. at 965. The court specifically noted that the witnesses testified from first-hand knowledge and no testimony was adduced to refute their statements. Id.
¶ 20. Herrington is in a very similar position as the defendant in Burks. Both the Stringers had contact with the man who arrived on their doorstep in February 1999, and both testified to what they personally observed. In addition, both of the Stringers testified that they did not confer with or attempt to influence each other in making their respective identifications. Herrington produced no evidence to cast doubt upon this testimony in his cross-examination of the Stringers or cross-examination of another witness who was present when the Stringers made their identification. Under these circumstances, the undesirability of the joint identification did not create error.
¶ 21. Each of the Biggers factors has substantial evidence to support it. Under the totality of the circumstances, we find that there was sufficient evidence to support the trial court's admission of the pre-trial identification.

B. The jury's verdict was contrary to the overwhelming weight of the evidence.
¶ 22. We have dealt with the sufficiency of the evidence. Herrington also disputes its weight. For that, we review the evidence in a light most favorable to the verdict. Pearson v. State, 428 So.2d 1361, 1364 (Miss.1983). We reverse only where the overwhelming weight of the evidence in this light is such that permitting it to stand would work an unconscionable injustice. Id.
¶ 23. With respect to the issue of the joint identification procedure, this was resolved in the forgoing section and need not be re-addressed.
¶ 24. As already noted, the initial police report was not provided to this court. *585 Any discrepancies it may have contained regarding the amount of money in Mr. Stringer's wallet cannot be addressed by this court. We do, however, have the testimony of Captain Russell and Mr. Stringer. Upon review of the testimony, we find no conflict.
¶ 25. The defense never questioned either witness on the amount of money in the wallet, nor ever contested the amount stated by Mr. Stringer in court or in the police report. However, even had Herrington done so, the matter would be one for the jury. Weighing conflicting testimony and determining credibility is their province. Gandy v. State, 373 So.2d 1042, 1045 (Miss.1979).
¶ 26. The weight of the evidence does not invalidate the conviction.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY OF CONVICTION OF GRAND LARCENY AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY RESTITUTION IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.