# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-01619-SCT

*HORACE PAUL BURROWS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/17/2005 |
| TRIAL JUDGE: | HON. STEPHEN B. SIMPSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | AUSTIN R. NIMOCKS |
| ATTORNEY FOR APPELLEE: | THE OFFICE OF THE ATTORNEY GENERAL BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/14/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.    Horace Paul Burrows (Burrows) was indicted by the Grand Jury of Harrison County in August 2004, for the crimes of Count I - sexual battery and Count II - possession of a controlled substance. A jury trial was held in relation to Count I - sexual battery of the indictment. A unanimous jury found Burrows guilty of Count I - sexual battery. He was sentenced to serve thirty years in the custody of the Mississippi Department of Corrections. Burrows plead guilty to Count II - possession of a controlled substance and was sentenced

to serve three years to run concurrently with his sentence in Count I - sexual battery, for a total of thirty years in the custody of the Mississippi Department of Corrections.

## FACTS

¶2.     Around February 2004, Burrows contacted Mary,[1] the mother of his daughter Jane. Mary and Jane resided in Columbus, Mississippi. Burrows requested that Mary bring Jane to the Gulf Coast, where he was currently residing, so that he could take her to the Biloxi Mardi Gras Parades. Mary agreed, and so Jane spent the night with Burrows and his romantic partner and her son. At the time of the incident Jane was seven years old.

¶3.     After the festival was over, Jane returned to her home. Everything seemed normal; Jane got up and went to school the next day. However, that evening, while taking a bath, Jane refused to sit down in the bathtub. When her mother asked why she refused to sit down, Jane told Mary that her "butts hurt and that her father (Burrows) had touched her 'butts with his thing.'" Upset and disturbed, Mary contacted law enforcement and took Jane to the hospital for an examination.

¶4.     Kevin Jackson, an investigator for the Harrison County Sheriff's Department, interviewed Jane regarding the alleged sexual molestation. Jane informed Jackson that Burrows molested her three times. First, she stated that Burrows touched her "tee-spot" with his hand. Jane also told Jackson that Burrows "moved his fingers around down there." Jackson asked Jane whether Burrows put his fingers on the inside. Jane response was that "he stayed on the outside." She stated that the second time, Burrows touched her "tee-spot"

---

[1]The names of the victim and her mother have been changed to protect their privacy.

with the vibrator. Lastly, Jane stated that Burrows touched "the inside of her bottom with his penis."

¶5.     During the interview, Jane also described and drew pictures of a vibrator and a penis. The two drawings were admitted into evidence. Jackson prepared a search warrant to corroborate the items that were described by Jane. While executing the search warrant for Burrows's residence, Jackson testified that the police recovered from the night stand next to Burrows's bed, a vibrator and a battery-operated control box that matched the description given by the victim.

¶6.     During the hospital examination, Jane tested positive for chlamydia, a sexually transmitted disease. Burrows also tested positive for chlamydia. Dr. Kergosien, a witness for the state, testified that chlamydia is normally transmitted by a sexual organ instead of a finger or an object.

¶7.     At trial, Jane testified that Burrows touched her "butts" with his "daddy spot." She also testified that Burrows touched her "tee-tee spot" with his hand and a vibrator. According to Jane, Burrows was holding the vibrator in his hand when it touched her "tee-tee spot." On cross examination, when asked whether Burrows had ever put his finger on her "tee-tee spot," she stated the following:

> A. I think.
> Q. You think he did or he did not?
> A.  I think he did.
> Q. He didn't stick his finger inside, did he?
> A. (Shrugs shoulders.)
> Q. Is that I don't know?
> A. (Nods head affirmatively.)
>         The Court: You have to answer
> A. Yes.

¶8. At the end of the State's case in chief, Burrows, through his attorney, argued a Motion For a Directed Verdict. The trial court denied the motion. The defense called no witnesses, so the case proceeded to the jury. After hearing the evidence presented, the jury found Burrows guilty of sexual battery. Burrows subsequently filed a Motion for Judgment of Acquittal Notwithstanding the Verdict or in the Alternative Motion for a New Trial. The motion was overruled and this appeal ensued. Burrows raises the following assignments of error on appeal: (1) Whether the trial court erred in overruling Appellant's Motion for a Directed Verdict and subsequent Motion for Judgment of Acquittal Notwithstanding the Verdict or in the Alternative Motion for a New Trial because the indictment did not conform to the evidence, and (2) Whether the trial court erred in admitting into evidence the alleged sexual devices that were used to commit sexual battery against the victim.

## DISCUSSION

**I.** **Whether the Trial Court Erred in Overruling Appellant's Motion for a Directed Verdict and Subsequent Motion for Judgment of Acquittal Notwithstanding the Verdict or in the Alternative Motion for a New Trial Because the Indictment did not Conform to the Evidence.**

¶9. A motion for a directed verdict and a subsequent motion for judgment notwithstanding the verdict challenge the legal sufficiency of the evidence. *Daniels v. State,* 742 So. 2d 1140, 1142 (Miss. 1999). This Court reviews the sufficiency of the evidence in the light most favorable to the state. *McClain v. State,* 625 So. 2d 774, 778 (Miss. 1993). "All credible evidence which is consistent with guilt must be accepted as true, and the State is given the benefit of all favorable inferences that may be reasonably drawn from the evidence." *Daniels*, 742 So. 2d at 1142 (citing *McClain,* 625 So. 2d at 778). "[M]atters concerning the

4

weight and credibility of the witnesses are to be resolved by the fact finder." ***Daniels***, 742 So. 2d at 1142 (citing ***McClain,*** 625 So. 2d at 778). "[T]his Court will reverse only where, 'with respect to one or more elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.'" ***Daniels***, 742 So. 2d at 1142 (quoting ***McClain,*** 625 So. 2d at 778).

¶10.    Burrows argues that the State failed to prove digital penetration of the victim's vagina as stated within the indictment. The indictment regarding Count I- sexual battery states:

> That: Horace Paul Burrows
>
> In the Second Judicial District of Harrison County, Mississippi, on or about February 24, 2004,
>
> being at the time in question twenty-four (24) or more months older than K.D., did wilfully, purposely, unlawfully and feloniously commit Sexual Battery upon K.D., a child who was at the time in question under fourteen (14) years of age, ***by engaging in the act of sexual penetration, to wit: by inserting his finger into the vagina of the said K.D.***,
>
> contrary to the form of the statute in such cases made and provided and against the peace and dignity of The State of Mississippi.

(Emphasis added).   To support his assignment of error, he relies on Jane's testimony discussed *infra*. Burrows's assignment of error is without merit.

¶11.    An indictment must inform a criminal defendant of the nature and cause of the accusations brought against him. Miss. Const. art. 3, § 26.  *See* also, ***Westmoreland v. State,*** 246 So. 2d 487, 489 (Miss. 1971).  The primary purpose of an indictment is to provide the defendant with a concise statement of the crime so that he may have a reasonable opportunity

5

to prepare and present a defense to those charges. ***State v. Berryhill***, 703 So. 2d 250, 255 (Miss. 1997); ***Williams v. State,*** 445 So. 2d 798, 804 (Miss. 1984); ***Bullock v. State***, 391 So. 2d 601, 606 (Miss. 1980); ***Westmoreland,*** 246 So. 2d at 489. Considering the primary purpose of an indictment, "[n]ot every variance between the language of the indictment and the proof is material." ***Burks v. State***, 770 So. 2d 960, 963 (Miss. 2000). "A variance is material if it affects the substantive rights of the defendant." ***Burks,*** 770 So. 2d at 963 (citing ***Upshaw v. State,*** 350 So. 2d 1358, 1362 (Miss. 1977)). In ***Berryhill***, this Court held that "different theories [of the crime charged] would plainly invite different defenses. Such 'trial by ambush' is at odds with this Court's jurisprudence on the need for an indictment to give enough notice for a defendant to prepare a defense." ***Berryhill***, 703 So. 2d at 256 (citing ***Newburn v. State,*** 205 So. 2d 260 (Miss. 1967).

¶12.    In this case, Burrows was charged with the crime of sexual battery by digital penetration pursuant to Miss. Code Ann. § 97-3-95 (Rev. 2006). Miss. Code Ann. § 97-3-95 (1)(d) states that: "a person is guilty of sexual battery if he or she engages in sexual penetration with: a child under the age of fourteen (14) years of age, if the person is more than twenty-four (24) months or more older than the child." Miss. Code Ann. § 97-3-97 (Rev. 2006) defines sexual penetration as follows: "sexual penetration" includes cunnilingus, fellatio, buggery or pederasty, and **penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal opening of another person's body**." (Emphasis added).

¶13.    Sufficient proof was presented at trial to show that Burrows committed the offense of sexual battery. Jane testified that Burrows molested her three times. Although Jane's

6

testimony regarding whether Burrows penetrated her vagina with his hand is not totally devoid of ambiguity, she does testify that he "touched her butts with his 'daddy spot.'" Investigator Jackson also testified that Jane told him that Burrows "touched the inside of her bottom with his 'daddy spot.'" Additionally, Dr. Kergosien testified that Burrows tested positive for chlamydia, a sexually transmitted disease. Jane also tested positive for chlamydia.

¶14. The variance between the language of the indictment, which explicitly stated that Burrows engaged in sexual battery against the victim by inserting his finger into her vagina and the proof presented at trial was not a fatal error. Burrows was provided sufficient notice that he was being charged with the crime of sexual battery. Accordingly, his ability to prepare and present a defense to the charge of sexual battery was not materially affected.

¶15. Burrows's defense to the charges brought against him was that he did not commit sexual battery against the victim. He argues that Mary was upset and angry at him for recently asking his girlfriend to marry him. He asserts that Mary persuaded Jane to make the sexual allegations against him out of anger. Burrows's attorney on closing arguments stated, "there is not a speck of evidence about that [digital penetration], not a bit. **Why? It didn't happen**." (Emphasis added). Regardless of whether the indictment charged Burrows with sexual battery by penetration with his finger, an object, or sodomy, his defense would still have been the same. Therefore, the variance between the indictment and the proof is immaterial.

  II.    **Whether the Trial Court Erred in Admitting into Evidence the Alleged Sexual Devices that Were Used to Commit Sexual Battery Against the Victim.**

7

¶16. Burrows contends that the vibrators that were seized by the police during the execution of the search warrant of his house were not probative of the crime charged, sexual battery by digital penetration, and should have been excluded as irrelevant. "[T]ools, weapons, and other physical evidence used or usable in the commission of a crime are admissible into evidence provided that they are relevant and not too remote." *Bryant v. State,* 850 So. 2d 1130, 1134 (Miss. Ct. App. 2002). "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless, the judge abuses this discretion so as to be prejudicial to the accused, [this] Court will not reverse." *Fisher v. State*, 690 So. 2d 268, 274 (Miss. 1996).

¶17. The victim in this case testified that Burrows used a vibrator to commit sexual battery against her. The design of the vibrator was such that Burrows's fingers had to slightly penetrate the victim during his use of the device. The jury could have reasonably inferred that some degree of penetration occurred during Burrows's use of the device. Penetration, however slight, is sufficient to establish the penetration element of sexual battery. *Johnson v. State*, 626 So. 2d 631, 633 (Miss. 1993). Because the vibrator was used during the commission of a felony and corroborated the victim's testimony, the trial court did not abuse its discretion in refusing to exclude the sexual devices from evidence.

## CONCLUSION

¶18. For the foregoing reasons, this Court affirms the judgment of the trial court.

¶19. **COUNT I: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF POSSESSION OF CONTROLLED SUBSTANCE AND SENTENCE OF THREE (3) YEARS IN THE**

8

**CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONCURRENTLY WITH THE SENTENCE IN COUNT I OF THE SAME CAUSE FOR A TOTAL OF THIRTY (30) YEARS TO SERVE.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, DICKINSON, RANDOLPH, AND LAMAR, JJ., CONCUR.**