965 So.2d 705 (2007)
Jason CARTER, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01623-COA.
Court of Appeals of Mississippi.
May 1, 2007.
Rehearing Denied September 25, 2007.
*706 Walter E. Wood, Ridgeland, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before KING, C.J., IRVING and GRIFFIS, JJ.
IRVING, J., for the Court.
¶ 1. Jason Carter was convicted by a Madison County jury of three counts of armed robbery, and was sentenced by the Madison County Circuit Court to a total of thirty years in the custody of the Mississippi Department of Corrections.[1] Aggrieved, Carter appeals and asserts the following four errors: that his initial stop by police was unlawful and that the evidence discovered as a result of the stop should not have been admitted at trial, that his inculpatory statement to police should not have been admitted, that the evidence against him is insufficient to support his conviction, and that the court erred in allowing hearsay testimony by one of the police officers involved in the case.
¶ 2. Finding error, we affirm in part and reverse and render in part.

FACTS
¶ 3. On April 28, 2003, Officer Christopher Corley of the Canton Police Department was dispatched to the Westside Trailer Park in Canton. Once there, Officer Corley encountered three visibly distressed individuals of Hispanic descent, two women and one man. Police officers determined the identity of the three individuals, but never testified regarding the identity of the victims at trial. Officer Corley testified that the individuals did not speak much English, but that they were able to relate that they had been robbed at gunpoint by three individuals.[2] The *707 perpetrators were described by the victims as three black males, one large, one skinny, one wearing a black T-shirt, and one wearing a white T-shirt. This description was sent out over the police radio.
¶ 4. Shortly after the description went out, Deputy Alex Slaughter observed three black males, including Jason Carter, who fit the description given by the victims. Evidence indicated that the location where Carter and the other individuals were observed was within a mile of the Westside Trailer Park. At that time, Deputy Slaughter called for backup. After other officers arrived, Carter and the others were patted down, and a pistol was located on Carter's person. The pistol was taken from Carter, and he was placed on the ground and secured with handcuffs. A further search of Carter revealed a receipt with a Hispanic name on it, a twenty-dollar bill, a wrist watch, and a small amount of money. A "piece of gray material" was also discovered.
¶ 5. The next morning, Carter was interviewed at the Madison County Police Department after executing a written waiver of his Miranda rights. Carter confessed that he, Joshua Carter, and Brien Hill had robbed three individuals at the Westside Trailer Park. Carter gave additional details regarding the robbery. Investigator Don Hicks transcribed Carter's confession and then allowed Carter to read the confession. At that time, Carter noted a needed correction, which Investigator Hicks made. Carter initialed the correction.
¶ 6. Thereafter, Carter was tried and convicted by a Madison County jury. Additional facts, as necessary, will be related during our analysis and discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES
1. Suppression of Evidence
¶ 7. In his first and third contentions of error, Carter claims that the trial court erred in refusing to suppress evidence obtained after Carter was stopped by police. Specifically, Carter claims that the stop was made without reasonable suspicion and that the evidence resulting therefrom should therefore have been suppressed.
¶ 8. Carter was initially detained for an investigative stop, and was arrested only after a pistol was discovered on his person. The Mississippi Supreme Court has stated that "[t]he constitutional requirements for an investigative stop and detention are less stringent than those for an arrest. This Court has recognized that `given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest. . . .'" Wilson v. State, 935 So.2d 945, 950(¶ 18) (Miss.2006) (quoting Floyd v. City of Crystal Springs, 749 So.2d 110, 114(¶ 16) (Miss.1999)). The Court discussed what constitutes reasonable suspicion: "whether, taking into account the totality of the circumstances, the detaining officers had a `particularized and objective basis for suspecting the particular person . . . of criminal activity.'" Id. (quoting Floyd, 749 So.2d at 115(¶ 17)).
¶ 9. Taking into account the totality of the circumstances, the officers had reasonable suspicion to stop Carter. Carter was observed within fifteen to twenty minutes of the robbery, in close proximity to the location of the robbery, and he and the individuals with him fit the general description of the perpetrators given to the police. Therefore, the officers had a "particularized *708 and objective basis for suspecting" Carter of having been involved in criminal activity. This issue is without merit.
2. Suppression of Statement
¶ 10. In his second claim of error, Carter argues that the court erred in refusing to suppress his statement, which Carter alleges was involuntary.
¶ 11. Carter appears to argue that his statement was involuntary, not because he was coerced by officers, but because he did not actually make the statement that was introduced into evidence. However, to date Carter has produced no evidence that the statement was falsified or was not accurate, other than his own assertions that he did not make any statement to the police. No evidence has been offered to show that Carter's signature on the statement was falsified. Therefore, the court did not abuse its discretion in refusing to suppress Carter's inculpatory statement, as no credible evidence was presented to indicate that the statement was anything other than a voluntary statement.
3. Sufficiency of the Evidence
¶ 12. In this assertion of error, Carter claims that the evidence introduced at trial was insufficient to sustain a conviction for armed robbery against the individuals named in the indictment. Specifically, Carter contends that the receipt found in his pocket is the only evidence identifying any of the individuals who were held at gunpoint while the trailer was being searched. That receipt identified only Eva Rivera. As Carter notes, the record is entirely devoid of any evidence identifying Margarita Garcia or Lino DeJesus Garcia, the other individuals identified in the indictment. Although Carter admits in his statement that one of his codefendants held a gun on the victims outside of the trailer, nothing in the statement identifies Margarita or Lino. Further, although Officer Corley talked to three people outside of the trailer and obtained their identity, neither he nor any other officer testified as to their identity during the trial.[3]
¶ 13. Evidence supporting a conviction is insufficient when "evidence of one or more of the elements of the charged offense is such that reasonable and fair-minded jurors could only find the accused not guilty." Wilson v. State, 936 So.2d 357, 363(¶ 16) (Miss.2006) (citing Hawthorne v. State, 835 So.2d 14, 21(¶ 31) (Miss.2003)). We view all the evidence in "the light most favorable to the State and consistent with the verdict." Id. (citing Hawthorne, 835 So.2d at 22(¶ 32)).
¶ 14. We agree with Carter that the evidence produced at trial was insufficient to sustain his conviction in counts II and III of the indictment, which were related to the armed robbery of two individuals identified in the indictment as "Margarita Garcia and Lino Dejesus Garcia." None of the victims testified at trial because they could not be located after the robbery. Furthermore, as we have already noted, no officers testified regarding the identity of the individuals who were questioned at the trailer park the night of the robbery. Without any evidence regarding the identity of the individuals who were robbed at the trailer park, it should *709 have been impossible for the jury to find that the evidence supported a conviction against Carter for the robberies of Margarita and Lino. Simply put, not only was the evidence insufficient to show that Carter robbed these individuals, such evidence was completely nonexistent.
¶ 15. Allowing Carter's conviction to stand would allow the jury to convict Carter without any proof that the individuals named in the indictment were actually the individuals that Carter robbed. The indictment clearly alleged that Carter had robbed specific individuals. By contrast, the evidence produced at trial indicated only that Carter had robbed Rivera and maybe two other unidentified individuals. In the face of such lack of proof, there was simply no evidence from which the jury could find that Carter robbed individuals "named in the indictment" as Margarita Garcia and Lino Garcia.
¶ 16. The State never sought an amendment of the indictment in this case to take out the identity of the victims of the robbery. Furthermore, the identity of the victim is an essential element of the crime of robbery. In Coffield v. State, 749 So.2d 215, 217(¶ 7) (Miss.Ct.App.1999) (quoting Miss.Code Ann. § 97-3-73) (Rev.1994), this Court noted: "Robbery is defined as the taking of `the personal property of another. . . .' We are satisfied that the State is not required, as a critical element of these crimes, to either charge or to put on affirmative proof, beyond the specific identity of the victim, that the victim was a human being." The defendant in Coffield had argued that the indictment was "fatally defective for its failure to charge that the victim Lana Coffield [his estranged wife], was a human being." Coffield, 749 So.2d at 216-17(¶ 1).
¶ 17. In Burks v. State, 770 So.2d 960, 963(¶ 12) (Miss.2000) (quoting Hughes v. State, 207 Miss. 594, 603, 42 So.2d 805, 807 (1949), citing Upshaw v. State, 350 So.2d 1358, 1362 (Miss.1977)), the Mississippi Supreme Court stated that "`an indictment must state the name of the victim of an offense where that is an element of the offense, and a failure to state it, or a material variance between statement and proof is fatal. . . .' A variance is material if it affects the substantive rights of the defendant." We have found nothing to indicate that the identity of a victim of a robbery is not an essential element of the crime of armed robbery. Thus, it appears to this Court that the State could not have amended the indictment to omit reference to the identities of the victims, even had it attempted to do so. In either case, there was a material variance between the indictment and the proof offered, since no evidence indicated the identity of any victim other than Rivera.
¶ 18. We note that this same issue was raised and discussed below. During the discussion of what instructions to submit to the jury, the State sought to have an instruction given to the jury that read for count I: "a human being, a different human being from Counts II and III. And then in Count II, put a different human being from Count[s] I and III." At this point in the discussion, the court questioned the State: "Well, why can't we just put their names?" In explaining his problem, the prosecutor stated: "The reason being is, I suppose there could be some argument made if we put their names in there that, ladies and gentlemen, you have to find him not guilty because they never proved that DeJesus was the man; because he never stepped forward." Shortly thereafter, the prosecutor admitted, "What I'm saying is, Judge, I think we may not have met the proof of who the individual names are. . . . I think it's best if we just leave their names out and say `a human being, different from Count[s] II and *710 III.'" At this point in the discussion, the defense objected, noting that the indictment named three specific individuals that Carter was alleged to have robbed. As a compromise, the court introduced the language that eventually went into the jury instructions, which stated that Carter had robbed "a person named in the indictment as Eva Rivera. . . ." The language was then changed in subsequent instructions to reflect the name of each of the other two victims. We note that this compromise did not make the evidence against Carter sufficient to sustain a conviction. The indictment clearly identified three separate individuals that Carter was alleged to have robbed. The instructions as given still clearly identified three separate people that Carter allegedly robbed, when the evidence was wholly insufficient to show that Carter robbed two of the three individuals.
¶ 19. We affirm Carter's conviction in count I, because evidence was produced supporting a conviction for the robbery of Rivera. Specifically, a receipt was introduced into evidence bearing Rivera's name. Testimony indicated that the receipt was recovered from Carter's pocket, along with some cash that was allegedly taken during the course of the robbery. Furthermore, one of Carter's co-defendants, Brien Hill, testified against Carter at trial. Hill was questioned extensively regarding his plea of guilty regarding the robbery of Rivera. Neither of the other two victims was named during Hill's testimony, and he apparently pled guilty only to the robbery of Rivera. The presence of the receipt, Hill's testimony, and the testimony of the officers and Carter's own admission that he and two other individuals had robbed three people at the trailer park is sufficient to sustain Carter's conviction. While scant, this evidence was such that reasonable and fair-minded jurors could find Carter guilty of the armed robbery of Rivera.
¶ 20. Because the evidence is insufficient to sustain a conviction against Carter for the armed robbery of Margarita Garcia and Lino Dejesus Garcia, we reverse and render those counts, leaving only Carter's conviction for armed robbery against Rivera intact.
4. Exclusion of Hearsay Testimony
¶ 21. Finally, Carter claims that the court erred in allowing hearsay testimony by Officer Corley regarding what one of the victims had told him. Carter's attorney objected at trial, and the trial judge ruled that the testimony would be admissible, although "not . . . necessarily for the truth of the matter, that being a factual determination to be made by the jury." The judge made a specific finding as to why the testimony was reliable. Although the judge stated that the testimony would not "necessarily" be admitted for the truth of the matter asserted, no limiting instruction was ever given to the jury.
¶ 22. Carter contends that the lower court erred in finding that the statement was reliable. Specifically, Carter argues that "[a]ny reliability the statements embodied due to the nature of the event they observed was diminished by the declarant's inability to adequately articulate a description of the perpetrators. Also, the statement loses trustworthiness after considering that the assault occurred in the dark of night."
¶ 23. The testimony in question was admissible as the statement of an unavailable witness. The court clearly did not err in ruling that the victims in this case were unavailable for purposes of the hearsay rule, as evidence offered strongly indicated that the State had been "unable to procure [their] attendance . . . by process or other reasonable means." M.R.E. 804(a)(5). In *711 fact, Carter's attorney stipulated to the unavailability of the victims at trial: "I'll stipulate that . . . if anybody could find the witnesses, Carroll Phelps could or could get somebody to find them. And that he has used every reasonable means to locate the witnesses that he was asked to locate."
¶ 24. Once a witness is ruled unavailable, there are several types of hearsay testimony that may be presented. See M.R.E. 804(b)(1-4). However, none of these exceptions fit the victim's statements testified to at trial. Instead, the statements are allowable under Rule 804(b)(5), which states:
A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.
Here, the statement was offered as evidence of a material fact (Carter's identity and involvement in the crime), the statement was more probative than other evidence that could be produced, and admission of the statement served the "interests of justice." The court also made a finding that there were "circumstantial guarantees of trustworthiness." Nothing in the rules prohibited the statement from being introduced as proof of the truth of the matter asserted, and no limiting instruction was required to be given to the jury.
¶ 25. As to Carter's claim that the statement lacked trustworthiness, we note that the statement was given to a police officer immediately after the commission of a crime, by individuals who had no apparent reason to lie to law enforcement. To date, no evidence has been produced by Carter to indicate that the victims were lying or had any reason to lie to Officer Corley. Carter claims that the statement lacks reliability because the victims were unable to give an adequate description of the men who had robbed them. We note that the description of the perpetrators given by the victims was quite clear: three black males, one large, one skinny, one wearing a black T-shirt, and one wearing a white T-shirt. In fact, it was this specific description that led to Carter's arrest. Furthermore, as to Carter's contention that the statements lacked reliability because the robbery occurred at night, we note that no evidence was presented to indicate that the lighting was so poor that an individual could not have made an adequate identification. No evidence whatsoever was presented to indicate the lighting, or lack thereof, at the trailer park where the robbery took place. This issue is without merit.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF ARMED ROBBERY IN COUNT I AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF ARMED ROBBERY IN COUNTS II AND III AND SENTENCE OF TWENTY YEARS ON EACH COUNT TO RUN CONCURRENTLY TO EACH OTHER AND CONSECUTIVELY TO THE SENTENCE IN COUNT I, IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
*712 KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Specifically, Carter was sentenced to twenty years each for counts II and III, and ten years for count I. Count I is to run consecutively to counts II and III, which are to run concurrently to each other, for a total of thirty years in the custody of the Mississippi Department of Corrections.
[2] It is not clear from the record whether the victims advised that they each had been robbed. However, the indictment contains three counts, one for each of the alleged victims, and alleges that money and personal property were taken from each of the victims. Neither the amount of money nor the identity of the personal property is identified in the indictment.
[3] We note that Carroll Phelps, case manager for the Madison County District Attorney's Office, testified that he had been unable to locate Eva Rivera, Margarita Garcia and Leno DeJesus Garcia in preparation for the trial. However, he did not testify to their connection with the trial, and certainly not that they were the victims of the robbery. We further note that these individuals were identified as the victims during the court's voir dire, and during closing arguments, but neither voir dire nor arguments by counsel are evidence.