LEE, P.J.,
 

 for the Court.
 

 PROCEDURAL HISTORY
 

 ¶ 1. A jury in the Yazoo County Circuit Court found Christopher Thomas guilty of three counts of armed robbery. Thomas was sentenced to fifteen years on each count with each sentence to be served concurrently in the Mississippi Department of Corrections. Thomas subsequently filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. After a hearing, the trial court denied Thomas’s motion.
 

 ¶ 2. Thomas now appeals, asserting the following issues: (1) the indictment was defective; (2) the trial court erred by al
 
 *816
 
 lowing the indictment to be amended on the day of trial; (3) the trial court erred by allowing the jury to observe him in restraints; (4) the trial court did not make on-the-record findings concerning the State’s reasons for peremptory challenges; (5) prosecutorial misconduct denied him a fair trial; (6) the trial court erred in amending jury instruction^ D-5; (7) the trial court erred in overruling certain objections; (8) the trial court erred in denying his motion for a directed verdict, his motion for a JNOV, and his motion for a new trial; and (9) the cumulative errors denied him a fair trial. Finding no error, we affirm.
 

 FACTS
 

 ¶ 3. On January 21, 2006, Thomas and his cousin were at the Game Room in Yazoo City. Several people were at the establishment playing pool and cards. Terry Collins testified that Thomas stood near his table for approximately thirty minutes. Thomas and his cousin left the Game Room. Approximately twenty minutes later, a man entered the establishment with some type of fabric around his face. The man displayed a firearm and demanded money from several patrons. Collins stated that the man entered the establishment and shot a gun in the air. Collins testified that he recognized the man as Thomas from the shoes he was wearing.
 

 ¶ 4. The man demanded money from the patrons, ultimately taking $800 from Collins, $500 from Jody Clark, and approximately $100 from Arthur Jones. Clark knew Thomas and recognized him from his voice, his clothes, and his shoes. Jones had also seen Thomas leave the Game Room and testified that he recognized Thomas when he returned by his clothing, shoes, and height. Thomas fled the scene.
 

 ¶ 5. Officer Jason Bright of the Yazoo City Police Department responded to the scene. Officer Bright spoke with several patrons, including Jones, Collins, and Clark. Officer Bright observed a bullet casing on the floor and a bullet hole in the ceiling above the pool table. Thomas ultimately turned himself in to the police department.
 

 DISCUSSION
 

 I. DEFECTIVE INDICTMENT
 

 ¶ 6. In his first issue on appeal, Thomas contends that the multi-count indictment was fatally defective for failing to recite the justification for a multi-count indictment. We note that Thomas failed to raise this issue at trial and is, therefore, procedurally barred from asserting this issue for the first time on appeal.
 
 Patrick v. State,
 
 754 So.2d 1194, 1195-96 (¶ 7) (Miss.2000). However, since the issue affects the substantial rights of Thomas, we will review this issue under the plain-error doctrine.
 
 Id.
 

 ¶ 7. Mississippi Code Annotated section 99-7-2(1) (Rev.2007) governs mul-ti-count indictments. When two or more offenses may be tried in the same court, they may also be charged in the same indictment if they are based on the same act or transaction or if they are based on separate acts or transactions connected as part of a common scheme or plan.
 
 Id.
 
 Thomas’s indictment tracks the language of the armed robbery statute.
 
 See
 
 Miss. Code Ann. § 97-3-79 (Rev.2006). Inclusion of the language found in the multi-count-indictment statute was not necessary for the indictment to be valid. This Court has held that “where an indictment tracks the language of a criminal statute it is sufficient to inform the accused of the charge against him.”
 
 Holifield v. State,
 
 852 So.2d 653, 657 (¶ 9) (Miss.Ct.App.2003) (citing
 
 Ward v. State,
 
 479 So.2d 713, 715
 
 *817
 
 (Miss.1985)). Thomas’s indictment included the relevant language from the statute as well as the applicable statute number. Furthermore, the evidence clearly showed that these crimes were based on the same act or transaction. We do not find any defect in his indictment. This issue is without merit.
 

 II. AMENDED INDICTMENT
 

 ¶ 8. Thomas next argues that the amendment to the indictment was a substantive change and rendered the indictment defective. Count III of the indictment read “Arthur James” and handwritten above James was “A/K/A Jones.” On the day of trial, the State made an oral motion to amend Count III of the indictment to change the name of the victim from Arthur James to Arthur Jones. The prosecutor then asked permission to leave the courtroom and ask the alleged victim whether his last name was James or Jones. The victim responded that his last name was Jones. Thomas objected, arguing that the amendment was untimely and that it would violate his due process rights. The trial court asked Thomas, “Do you have any evidence that there is an Arthur James as opposed to a Jones?” Thomas responded in the negative. The trial court overruled Thomas’s objection and granted the State’s motion to amend the indictment.
 

 ¶ 9. Amendments to indictments are allowed if they contain defects of form and not of substance.
 
 Ivy v. State,
 
 792 So.2d 319, 321 (¶ 4) (Miss.Ct.App.2001). We have held that “a change of the name of the victim in an indictment goes to form not substance.”
 
 Id.; see also Burson v. State,
 
 756 So.2d 830, 834 (¶ 14) (Miss.Ct.App.2000). We cannot find that Thomas’s due process rights were violated by amending the indictment to correct the spelling of Jones’s last name. Thomas claims unfair surprise; however, the witness was outside the courtroom waiting to testify and Thomas was aware that Jones was going to testify. Furthermore, Thomas was unable to show that his defense would be compromised by this amendment.
 

 ¶ 10. Thomas also cites to
 
 Carter v. State,
 
 965 So.2d 705, 709 (¶ 17) (Miss.Ct.App.2007) for the proposition that the State is required to prove the identity of the victim of an armed robbery. However, the issue in
 
 Carter
 
 was that the State failed to produce two of the victims listed in the indictment and tried to amend the indictment to omit the reference to the names of these two victims.
 
 Id.
 
 We find
 
 Carter
 
 inapplicable to the present case. This issue is without merit.
 

 III. ALLOWING THE JURY TO SEE THOMAS IN RESTRAINTS
 

 ¶ 11. In his third issue on appeal, Thomas argues that the trial court erred when it allowed the jury to see him wearing leg restraints. After the trial court granted a recess during voir dire, Thomas’s leg restraints were not removed prior to the entrance of the jury. A bench hearing was conducted, and the following exchange occurred between the trial court, Joseph Hollomon (Thomas’s attorney), and Steven Waldrup (attorney for the State):
 

 THE COURT: I just told them to remove those.
 

 MR. HOLLOMON: You did, Your Hon- or. I will state this, though. He was seated during the entire time the jury came back into this courtroom, and I would be surprised if any of them have seen his feet because he’s been seated ever since he came in here.
 

 THE COURT: Okay. They took [the restraints] off his hands?
 

 MR. HOLLOMON: They did Your Honor.
 

 
 *818
 
 MR. WALDRUP: He doesn’t have any on his hands. I just noticed he’s got [them] on his ankles.
 

 THE COURT: Make sure you keep him seated, and once the jury’s out, I’ll make sure they take them off.
 

 ¶ 12. Thomas contends that the trial court should have immediately taken a recess to remove the leg restraints and questioned the jury as to whether they had seen him in the leg restraints. From the record, it is apparent that Thomas’s attorney did not think the jury had seen the leg restraints. Furthermore, Thomas failed to request a mistrial or any further action. Although it is unclear when the leg restraints were removed, Thomas has failed to show how he was prejudiced in this instance.
 
 See Williams v. State,
 
 962 So.2d 129, 131 (¶ 8) (Miss.Ct.App.2007) (defendant has a right to be free of restraints in front of jury but must show prejudice before reversal is warranted). This issue is without merit.
 

 IV.
 
 BATSON
 
 ISSUE
 

 ¶ 18. In his fourth issue on appeal, Thomas argues that the trial court erred in not making an on-the-record factual determination on the merits of the State’s race-neutral reasons for its peremptory challenges.
 
 Batson v. Kentucky,
 
 476 U.S. 79, 96, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) provides the procedure for trial courts to follow when peremptory challenges are used to remove members of an identified racial group from jury service based upon nothing more than their race. To successfully assert a
 
 Batson
 
 challenge, the following must occur:
 

 First, the defendant must establish a prima facie case of discrimination in the selection of jury members. The prosecution then has the burden of stating a racially neutral reason for the challenged strike. If the State gives a racially neutral explanation, the defendant can rebut the explanation. Finally, the trial court must make a factual finding to determine if the prosecution engaged in purposeful discrimination. If the defendant fails to rebut, the trial judge must base his decision on the reasons given by the State.
 

 Thorson v. State,
 
 721 So.2d 590, 593 (¶ 2) (Miss.1998) (internal citations omitted).
 

 ¶ 14. This Court gives great deference to the trial court’s finding of whether or not a peremptory challenge was race neutral.
 
 Id.
 
 at 593 (¶ 4). “[W]e will not overrule a trial court on a
 
 Batson
 
 ruling unless the record indicates that the ruling was clearly erroneous or against the overwhelming weight of the evidence.”
 
 Id.
 

 ¶ 15. After the State exercised its peremptory challenges, Thomas raised a
 
 Bat-son
 
 challenge. The trial court found a prima facie case of discrimination and asked the State to provide race-neutral reasons for striking five potential jurors (referred to according to the strike used by the State: Si through S5). The State addressed the
 
 Batson
 
 challenge as follows:
 

 MR. WALDRUP: The race-neutral reason for SI, Your Honor, is that Ms. Florshene Thomas stated that she was close personal friends with the whole family. I went back and asked her about her last name being Thomas. We got into a conversation about that. Because of her statement about being close friends with the family or knowing the family, that’s our reason for striking her. THE COURT: Court finds a race-neutral reason and will accept Thomas as SI. S2?
 

 MR. WALDRUP: Dedrick Deonne Woodberry. We have two or three cases in our office right now on a Wood-berry ... for selling cocaine to MBN agents, and that’s our basis for the challenge on Woodberry.
 

 
 *819
 
 THE COURT: Court finds a race-neutral reason for Woodberry and will accept S2. Harris?
 

 MR. WALDRUP: Linda Harris is the one I tried to strike for cause. She knew three of the victims and she knew the defendant as well.
 

 THE COURT: Court finds race-neutral reason for Harris and will accept her as S3. Rodney Jefferson?
 

 MR. WALDRUP: Rodney Jefferson stated in questioning that he had seen [Thomas] around in the community, and during the process of picking the jury, I was informed by the law enforcement officers that he was good friends with the defendant.
 

 THE COURT: Court finds a race-neutral reason for Jefferson and will accept him as S4. S5, Austin.
 

 MR. WALDRUP: Mr. Austin, Your Honor, his wife was first cousin[s] with one of the [victims] involved. He was related — he was related by marriage to the defendant also and said — but he said he could do it.... But it’s because of that relationship that we chose S5.
 

 THE COURT: Court finds a race-neutral reason for Austin and will accept him as S5.
 

 ¶ 16. Thomas contends that the trial court did not make an on-the-record determination as to the merits of the State’s race-neutral reasons, and the trial court did not give him an opportunity to rebut the State’s proffered reasons. In regard to whether the trial court allowed Thomas to rebut the State’s reasons, we note that Thomas failed to object during the
 
 Batson
 
 hearing. Furthermore, although the trial court did not specifically ask Thomas for rebuttal, Thomas had the opportunity to offer rebuttal at any time during the hearing.
 

 ¶ 17. Thomas cites to
 
 Hatten v. State,
 
 628 So.2d 294, 298 (Miss.1993) in support of his position that the trial court is required to make specific findings as to the merits of the race-neutral reasons given for excluding the potential jurors.
 
 Hat-ten
 
 requires trial courts to make “an on-the-record, factual determination, of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors.”
 
 Id.
 
 at 298. However, in
 
 Gary v. State,
 
 760 So.2d 743, 748 (¶ 12) (Miss.2000), the supreme court stated the following:
 

 [W]here a trial judge fails to elucidate such a specific explanation for each race neutral reason given, we will not remand the case for that Batson-related purpose alone. This Court is fully capable of balancing the Batson factors in cases such as this one. Continued remand of such cases only wastes the trial court’s limited resources and acts to further delay justice.
 

 See
 
 Pruitt v. State,
 
 986 So.2d 940, 946 (¶¶ 20-21) (Miss.2008);
 
 Johnson v. State,
 
 875 So.2d 208, 214 (¶ 10) (Miss.2004);
 
 Berry v. State,
 
 802 So.2d 1033, 1047 (¶¶ 47-49) (Miss.2001);
 
 Newberry v. State,
 
 2007-KA-00875-COA,-So.3d-(¶ 7), 2008 WL 5147118 (Miss.Ct.App. Dec. 9, 2008). Since Thomas offered no rebuttal, the trial court based its decision on the reasons given by the State and found these reasons to be race-neutral. We can find no error on the part of the trial court; thus, this issue is without merit.
 

 ¶ 18. We note that the trial court had to conduct another
 
 Batson
 
 hearing based on Thomas’s improper use of peremptory strikes. The trial court found that one of Thomas’s race-neutral reasons was unacceptable and refused to grant that particular strike.
 

 V. PROSECUTORIAL MISCONDUCT
 

 
 *820
 
 ¶ 19. In his fifth issue on appeal, Thomas cites to five instances of alleged prose-cutorial misconduct that denied him a fair trial. We will address each perceived ei"-ror separately.
 

 A. Comment Concerning Thomas Firing a Weapon
 

 ¶ 20. During opening statements, the State was describing the police officer’s attempt to get a description of the person “who did the shooting and robbing.” Thomas objected to any testimony about a shooting. Once Thomas realized that the State was describing Thomas’s actions when he entered the establishment and not implying that he was shooting the patrons, Thomas withdrew his objection. Upon resuming its opening statement, the State reiterated to the jury that Thomas fired a shot into the ceiling and not at the individuals inside. Since Thomas withdrew his objection, we cannot find any error with this statement.
 

 B. Comment Concerning “Exhibiting” During Opening Statement
 

 ¶ 21. During opening statements, the State was discussing the elements of armed robbery and stated the following: “Not just robbery, armed robbery. Exhibiting a weapon. See, when you point and wave, you are exhibiting a weapon.” Although Thomas failed to object to this statement, we find no error regardless. The State was merely discussing the elements of armed robbery.
 

 C. Comment on Facts Not in Evidence
 

 ¶ 22. During closing statements, the State said the following: “If he had something over his eyes, he couldn’t see so his whole face wasn’t covered, folks. That’s the thing. His whole face wasn’t covered.” Thomas objected, arguing that this statement was contrary to the evidence. The trial court overruled the objection. In general, parties may comment upon any facts introduced into evidence, and may draw whatever deductions and inferences that seem proper from the facts.
 
 Bell v. State, 725
 
 So.2d 836, 851 (¶40) (Miss.1998). Although all the witnesses testified that Thomas had some type of fabric tied around his head, we cannot find that this statement concerning Thomas’s eyes was prejudicial. One could easily infer that, in order to commit the crimes as charged, Thomas would not have restricted his eyesight.
 

 D.Comments Regarding a False Statement Made by a Witness
 

 ¶ 23. Thomas argues that the State improperly attempted to impeach Rosie Thomas, Thomas’s mother, during Thomas’s testimony. During her testimony Rosie was asked what Thomas was wearing on the night of the armed robbery. Rosie stated that Thomas was wearing a long blue-striped shirt, blue jeans, and black shoes. On cross-examination, Rosie stated that she had gone to bed around 11:35 p.m. on the night of the armed robbery and heard about the alleged armed robbery not long after around 12:10 a.m. The State also elicited information concerning her shift hours as a dispatcher for the police department. When asked about her work schedule, Rosie stated that she believed the armed robbery had occurred on a Saturday night and that she had worked the day shift that Saturday from 6:00 a.m. until 2:00 p.m.
 

 ¶ 24. During direct examination, Thomas stated that he returned home to Rosie’s house sometime after 10:30 or 11:00 p.m. and that he thought his mom was in her room. During Thomas’s cross-examination, the State asked Thomas if he was aware that, on the night of the robbery, Rosie clocked in for work at 11:00 p.m. Thomas objected to the State trying to impeach him with Rosie’s testimony. The
 
 *821
 
 trial court overruled the objection. However, on appeal, Thomas asserts that the State was attempting to impeach Rosie’s testimony, rather than Thomas’s testimony in violation of Rule 613(b) of the Mississippi Rules of Evidence.
 

 ¶ 25. First, we note that Thomas’s contention is waived. “Asserting grounds for an objection on appeal that differs from the ground given for the objection at the trial level does not properly preserve the objection for appellate review.”
 
 Woodham v. State,
 
 779 So.2d 158, 161 (¶ 12) (Miss.2001). Second, we note that Rule 613(b) refers to prior inconsistent statements by a witness. We find no evidence in the record of any prior statements made by Rosie that could be used to impeach her testimony.
 

 ¶ 26. Thomas also takes issue with a statement made by the State to the trial court regarding a rebuttal witness. However, this conversation occurred at the bench, away from the jury’s ears.
 

 E. Comment During Sentencing Hearing
 

 ¶ 27. During the sentencing hearing the State made a comment that the trial court should “take into consideration the fact that he put us through this trial ... [Thomas] should have taken his plea offer.” Thomas responded that it is “unconstitutional for him to be punished for exercising his right to a trial.” The trial court responded, “And I agree with that. I would not consider that as part of his sentencing.” The trial court clearly was not influenced by Thomas’s failure to plead guilty. We can find no prejudice in the State’s comments.
 

 F. Cumulative Error
 

 ¶ 28. Thomas argues that the numerous instances of prosecutorial misconduct necessitate a reversal. As we have found no evidence of prosecutorial misconduct, this issue is without merit.
 

 VI. JURY INSTRUCTION D-5
 

 ¶ 29. In his sixth issue on appeal, Thomas argues that the trial court erred in amending jury instruction D-5 to strike certain language. The instruction stated the following:
 

 It is a question of fact whether the gun claimed to have been used by Christopher Thomas was a deadly weapon in the manner claimed to have been used. A deadly weapon may be defined as any object, article or means which, when used as a weapon under the existing circumstances is reasonably capable of producing or likely to produce death or serious bodily harm to a human being upon whom the object, article or means is used.
 

 The State objected to the language “in the manner claimed to have been used,” and over an objection by Thomas, the language was removed from the instruction. It is well-settled law that an appellate court does not review jury instructions in isolation; instead, we consider them as a whole to determine if the jury was properly instructed on the law.
 
 Milano v. State,
 
 790 So.2d 179, 184 (¶ 14) (Miss.2001). When read as a whole, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.
 
 Phillipson v. State,
 
 943 So.2d 670, 671 (¶ 5) (Miss.2006).
 

 ¶ 30. Thomas cites to
 
 Davis v. State,
 
 530 So.2d 694, 700 (Miss.1988) to support his contention that using this particular language in jury instructions has been upheld. We agree with Thomas. However, we find no reversible error because the language in the second paragraph of D-5, “when used as a weapon under the existing circumstances,” adequately conveys the same point as the removed language.
 

 
 *822
 
 VII. OBJECTIONS MADE BY THOMAS
 

 ¶ 31. In his seventh issue on appeal, Thomas argues that the trial court erred in overruling certain objections made during trial. The first challenge occurred during the direct examination of Collins. The State asked Collins if his story of the events that night had changed between the robbery and trial. Thomas made a general objection, which the trial court overruled. The supreme court has stated that objections must be made with specificity in order to be preserved for appeal and that “general objections will not suffice.”
 
 Seeling v. State,
 
 844 So.2d 439, 445 (¶ 17) (Miss.2003). Thomas has failed to preserve this issue on appeal.
 

 ¶ 32. The next objection occurred during the testimony of Officer Bright. The State asked Officer Bright if there was another suspect during the course of the investigation. Officer Bright responded in the negative. Thomas objected, stating the question called for speculation. Thomas argues that Officer Bright was not the chief investigator on the case and did not have firsthand knowledge of the investigation. However, Officer Bright clarified that there was not another suspect in his part of the investigation. We note that there were no other suspects because Thomas turned himself in on the night of the armed robbery. We cannot find any error by the trial court in overruling this particular objection.
 

 ¶ 33. Thomas also refers us to his earlier issue concerning the improper impeachment of Rosie’s testimony through Thomas’s testimony. Finding no error, we decline to review this argument again.
 

 ¶ 34. Lastly, Thomas cites to his cross-examination where the State asked him if he had ever owned a firearm. Thomas objected as to relevance, and the trial court sustained the objection. At the same time the trial court ruled on the objection, Thomas answered “thirty-eight.” Thomas claims that the trial court overruled the objection, but the record clearly reflects that the trial court sustained the objection. Since Thomas did not request that the jury be told to disregard the objectionable matter, then there is no error.
 
 See Shipp v. State,
 
 749 So.2d 300, 303-04 (¶¶ 16-17) (Miss.Ct.App.1999). This issue is without merit.
 

 VIII. SUFFICIENCY OF THE EVIDENCE
 

 ¶ 35. In his eighth issue on appeal, Thomas argues that the trial court erred in failing to grant his motion for a directed verdict and his motion for a JNOV. Thomas argues that the evidence was legally insufficient to support the verdict. Thomas mentions that the verdict was against the overwhelming weight of the evidence, but his brief solely discusses whether the evidence was sufficient.
 

 ¶ 36. A motion for a JNOV challenges the sufficiency of the evidence.
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005). “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.’”
 
 Id.
 
 (citation omitted). If, viewing the evidence in the light most favox*able to the State, any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of the crime existed, this Court will affirm the denial of a motion for a JNOV.
 
 Id.
 
 If we find that reasonable, fair-minded jurors could have concluded that the defendant was guilty of the accused crime, the evidence will be deemed sufficient.
 
 Id.
 

 ¶ 37. Thomas’s sole contention is that the State failed to prove that he was,
 
 *823
 
 in fact, the perpetrator. Thomas relies on the testimony from Collins, Clark, and Jones, who each stated that they did not see the face of the armed robber. However, Collins had known Thomas for ten to fifteen years and testified that he recognized Thomas from the clothes he was wearing. Clark had known Thomas for eight years and recognized him from his voice, his clothes, and his shoes. Jones had also seen Thomas leave the Game Room and testified that he recognized Thomas when he returned by his clothing, shoes, and height. Although there was conflicting testimony as to the exact color of Thomas’s clothes, the jury was responsible for weighing this conflicting evidence, “evaluating the credibility of witnesses, and determining whose testimony should be believed.”
 
 Ford v. State,
 
 737 So.2d 424, 425 (¶ 8) (Miss.Ct.App.1999). From the evidence presented, we find that reasonable, fair-minded jurors could have concluded that Thomas was guilty of armed robbery. This issue is without merit.
 

 IX. CUMULATIVE ERROR
 

 ¶ 38. In his final issue on appeal, Thomas argues that the cumulative errors of the trial court mandate reversal for a new trial. Finding each of Thomas’s arguments to be without merit, we consequently do not find any cumulative error that would necessitate a reversal. This issue is without merit.
 

 ¶ 39. THE JUDGMENT OF THE YA-ZOO COUNTY CIRCUIT COURT OF CONVICTION OF THREE COUNTS OF ARMED ROBBERY AND SENTENCE OF FIFTEEN YEARS FOR EACH COUNT, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YAZOO COUNTY.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ, CONCUR.