# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-01116-COA

**DARREN CLARK A/K/A DARREN MARICE**         **APPELLANT**
**CLARK A/K/A FAT PIG**

**v.**

**STATE OF MISSISSIPPI**         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/21/2023 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JODY EDWARD OWENS II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/14/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**LAWRENCE, J., FOR THE COURT:**

¶1. Darren Clark was convicted by a Hinds County jury of armed robbery of the store "Carnieceria Valdez." He was sentenced to serve forty years in the custody of the Mississippi Department of Corrections (MDOC). Clark filed no post-trial motions. He now appeals, alleging his indictment was legally defective for failing to include the name of the store employee who was robbed. The indictment alleged that Clark took or attempted to take a cash register from "Carnieceria Valdez, from the person or from the presence of the staff thereof." Finding no error, we affirm.

## FACTUAL BACKGROUND

¶2.     On December 22, 2018, between approximately 6:15p.m. and 6:30 p.m., four masked men conducted an armed robbery of the store Carnieceria Valdez at 2275 Hwy 80 in Hinds County, Mississippi. Four men entered the store while one remained outside as the driver. Once inside the store, the men pointed firearms at two different customers and the cashier who was employed at the store. While pointing firearms, one of the men jumped over the counter and demanded the cash register be opened. The man took the entire cash register and all four men then fled the scene. Darren Clark and the three others were indicted for the robbery. Clark's trial began on February 1, 2023.

¶3.     First, the State called two eyewitnesses to the armed robbery in question. The State called Marie Bermudez, who happened to be at the store at the time of the robbery. Bermudez had her six-year-old daughter in the store with her. Bermudez explained that as soon as she walked into the store, a masked man had a "gun pointed" at her head. She saw another masked man jump over the counter and take the entire cash register, and then she saw the men flee the store. The second eyewitness called to the stand was Manuel Castro. He, too, testified that one of the men had a "gun" pointed at his "face" and that he (Castro) saw the men take the cash register. Castro testified that one of the four men pointing the gun at him demanded both Castro's money and the keys to his vehicle, but he refused. Both eyewitnesses testified that the four men were wearing masks inside the store, that each man had a firearm, and that they all left with the cash register.

¶4.     The State also called crime scene investigator Stephanie Horn. She authenticated

2

several photographs of the crime scene and some still shots of surveillance video taken from the store's security cameras. The video depicted four masked individuals pointing firearms at both customers and the cashier and jumping over the store counter.

¶5.    During a recess, the State announced to the court that it intended to call the cashier of the store, Alvara Alvaronda, as its next witness. The State explained that the cashier did not understand fluent English and, instead, spoke Spanish. The State wanted to use a "certified Spanish interpreter."   The Defense objected that "any testimony" about the "robbery at the subject location" would be "cumulative."[1] The court overruled the objection.

¶6.    Alvaronda, through the Spanish interpreter, testified that she was employed at the Valdez store as a cashier on the night of the robbery. She testified that four men entered the store, and one of them pointed a firearm at her "chest," demanding that she open the cash register. He jumped over the counter, and Alvaronda opened the register. The man then "lifted up the box and they took it up." She said all four men were "covered up." Alvaronda explained that she was really nervous, and when "they put the gun on [her,]" she "thought that was it."

¶7.    The State called Bernard Randall to testify next. He had been indicted for his role in the armed robbery in question and had pled guilty. He denied that he received any benefit for testifying in Clark's trial. He admitted that he, Jermaine White, Aaron Horton, and Darren Clark had committed the robbery at the Valdez store on December 22, 2018. Randall

---

[1] It is somewhat perplexing that Clark argues on appeal that his conviction should be reversed because the State did not include Alvaronda's actual name in the indictment—rendering it defective—but objected at trial that the cashier's testimony was "cumulative."

3

explained that another individual drove the vehicle and waited outside while he, White, Horton, and Clark all entered the store armed and wearing masks. Randall testified that Clark was the one who called him about the plan to rob a place. They were "riding around looking for businesses to hit for Christmas" because they had to "support our family." They eventually arrived at the Valdez store and "just said, hit that." Randall viewed the photographs and identified each individual in a mask with a firearm. He testified that Clark was wearing a "gray hoodie." He admitted that they grabbed the cash register, left the scene, and later split the money, approximately six hundred dollars each.

¶8. The last witness to testify was Captain Kevin Nash of the Jackson Police Department. In 2018, Captain Nash was the detective who assisted in the investigation of the armed robbery. Captain Nash located and interviewed Darren Clark after the robbery. Captain Nash testified that Clark confessed to being involved in the robbery but indicated that Clark stated he was only the "lookout person" and did not enter the store. Approximately eight minutes of the several hours of videotaped interview of Clark was played for the jury. Finally, Captain Nash authenticated and played for the jury the Valdez store's security camera footage of the robbery in question.

¶9. The defense did not call any witnesses. The jury convicted Clark of armed robbery as charged. The trial court sentenced him to serve forty years in MDOC's custody. Clark filed no post-trial motions and appealed his conviction.

**DISCUSSION**

¶10. The only issue Clark presents on appeal concerns the legal sufficiency of his

indictment. Clark alleged the indictment was "fatally defective for failing to include the essential element of armed robbery" because it failed "to name the victim of armed robbery." Whether an indictment is legally defective is an issue of law, and we review rulings on such issues de novo. *Lepard v State*, 394 So. 3d 1061, 1069 (¶31) (Miss. Ct. App. 2024) (citing *Tapper v. State*, 47 So. 3d 95, 100 (¶17) (Miss. 2010)); *see also Payne v. State*, 282 So. 3d 432, 436 (¶13) (Miss. Ct. App. 2019); *Montgomery v. State*, 891 So. 2d 179, 185 (¶22) (Miss. 2004).

¶11.    The State contends that Clark is barred from raising this issue on appeal because he did not do so in the trial court. But "it is settled that objections to the sufficiency of an indictment may be raised for the first time on appeal." *Williams v. State*, 169 So. 3d 932, 935 (¶8) (Miss. Ct. App. 2014) (citing *Tucker v. State*, 47 So. 3d 135, 137 (¶8) (Miss. 2010); *Ross v. State*, 954 So. 2d 968, 1015 (¶126) (Miss. 2007); *Havard v. State*, 928 So. 2d 771, 801 (¶59) (Miss. 2006); *State v. Berryhill*, 703 So. 2d 250, 254 (¶16) (Miss. 1997); *Copeland v. State*, 423 So. 2d 1333, 1336 (Miss. 1982)).

¶12.    Clark argues on appeal that the indictment was missing an essential element by failing to include the birth name of the cashier who was working at the Valdez store for its owners at the time of the armed robbery.  A Hinds County grand jury returned the following indictment:

> DARREN CLARK while acting in concert with and/or aiding, abetting, assisting, or encouraging another or others, to wit: Aaron Horton, Jermaine White, Bernard Randall  on or about the 22nd day of December, 2018, in the First Judicial District of Hinds County **did willfully, knowingly, and feloniously take, or attempt to take, at 2275 Highway 80 in Jackson, MS, Carnieceria Valdez, from the person or from the presence of the staff**

5

> **thereof,** a cash register teal with an unknown amount of U.S. Currency inside, the personal property of Carnieceria Valdez, against their wills, by violence to their person(s) or by putting such person(s) in fear of immediate injury to their person(s), by the exhibition or use of a deadly weapon, an unknown caliber handgun, in violation of Section 97-3-79 Mississippi Code of 1972 Annotated, as amended[.]

(Emphasis added).

¶13. The most relevant portion of the indictment for purposes of this appeal concerns the language, "feloniously take, or attempt to take, at 2275 Highway 80 in Jackson, MS, Carnieceria Valdez, from the person or from the presence of the staff thereof." Clark is correct that the actual birth name of the cashier Alvara Alvaronda is not in the indictment. Clark argues that because the name of the cashier is not in the indictment, it is fatally defective; thus, he argues that his conviction must be reversed and that this charge must be dismissed. His indictment alleged a violation of Mississippi Code Annotated section 97-3-79. That section reads:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery[.]

Miss. Code Ann. § 97-3-79 (Rev. 2020).

¶14. The elements of armed robbery are settled in our caselaw. *See Lenoir v. State*, 224 So. 3d 85, 91 (¶19) (Miss. 2017). "The essential elements of armed robbery are: (1) a felonious taking or attempt to take, (2) from the person or from the presence, (3) the personal property of another, (4) against his will, (5) by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon."

6

*Jones v. State*, 281 So. 3d 137, 146 (¶26) (Miss. Ct. App. 2019) (quoting *Oliver v. State*, 234 So. 3d 443, 445 (¶11) (Miss. Ct. App. 2017)).

¶15.    Clark cites *Carter v. State*, stating that "the identity of the victim is an essential element of the crime of robbery." *Carter v. State*, 965 So. 2d 705, 709 (¶16) (Miss. Ct. App. 2007). The *Carter* court relied on *Coffield* immediately following that statement, providing that "[r]obbery is defined as the taking of the personal property of another[.]" *Id.* (quoting *Coffield v. State*, 749 So. 2d 215, 217 (¶7) (Miss. Ct. App. 1999)). The Court continued, "the State is not required, as a critical element of these crimes, to either charge or put on proof, **beyond the specific identity of the victim**, that the victim was a human being." *Id.* *Coffield* involved a defendant who argued his indictment was defective "for its failure to charge that the victim . . . was a **human being**." *Id.* (emphasis added). That is not the case here.

¶16.    "Our caselaw recognizes that the primary purpose of an indictment is to **notify an accused of the charges against him** [and] to allow him to prepare an adequate defense." *Townsend v. State*, 188 So. 3d 616, 620 (¶13) (Miss. Ct. App. 2016) (emphasis added) (quoting *Brown v. State*, 944 So. 2d 103, 106 (¶8) (Miss. Ct. App. 2006)). "This simply means that an indictment must provide the accused with a concise and clear statement of the elements of the crime with which the accused is actually charged." *Id.* More specifically, "[a]n indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." *Vale v. State*, 243 So. 3d 205, 209 (¶14) (Miss. Ct. App. 2017)

(quoting *Spearman v. State*, 80 So. 3d 116, 119 (¶12) (Miss. Ct. App. 2011)).

¶17.    *Burks v. State*, 770 So. 2d 960 (Miss. 2000), involved a group of defendants who were indicted for

> willfully, unlawfully, and feloniously tak[ing], steal[ing] and carry[ing] away from Tom Seese, an employee of Grady Sims, doing business as Sims Distributing Company, over Two-Hundred and Fifty Dollars ($250.00) in cash money . . . of the personal property of Grady Sims.

*Id.* at 962 (¶8).    Burks, one of these defendants, alleged that the indictment was fatally defective because "the money was **not taken or stolen from Tom Seese**, as the indictment states, but was **instead taken from Seese's employer, Grady Sims**, who own[ed] Sims Distributing Company." *Id.* at (¶9) (emphasis added).

¶18.    Our supreme court recognized, "[A]n indictment must state the name of the victim of an offense where that is an element of the offense[.]" *Id.* at 963 (¶12).  "[A] failure to state the name[] or a material variance between statement and proof is fatal, **but an immaterial variance is not**." *Id.* (emphasis added) (citing *Hughes v. State*, 207 Miss. 594, 603, 42 So. 2d 805, 807 (1949)).  "Not every variance between the language of the indictment and the proof is material." *Id.* at (¶13).  "A variance is material if it **affects the substantive rights of the defendant**." *Id.* (emphasis added) (citing *Upshaw v. State*, 350 So. 2d 1358, 1362 (Miss. 1977)).

¶19.    The supreme court ultimately held that Burks's indictment was "not fatally defective" because the errors he took issue with "in the indictment . . . [we]re **matters of form and not of substance**[.]" *Id.* at 962 (¶10). Further, the court found that Seese's employment at Sims and Sims Distributing Company "hardly matter[ed]." *Id.* at 963 (¶14).  "Seese was

8

responsible to his employer to account for the money from the machines." *Id.* "Therefore, **Seese's losses are the losses of his employer**." *Id.* (emphasis added).

¶20. We find the same deciding principle in *Burks* helps guide our decision in this case. In *Burks*, the alleged defective indictment included the specific name of Seese before stating the business for which he was employed. *See id.* at 962 (¶8). In Clark's case, the alleged defective indictment includes the name of the business but omits the specific name of the employee, Alvaronda, behind the cash register at the time of the armed robbery. Just as the *Burks* court held that "Seese's losses are the losses of his employer[,]" we find that Alvaronda's losses, too, are precisely that: "the losses of h[er] employer[,]" Carnieceria Valdez. *Id.* The "staff member" of Carnieceria Valdez was referred to in the indictment, just not by her birth name.

¶21. Further, this state allows amendments to indictments "**if they contain defects of form and not of substance**." *Thomas v. State*, 14 So. 3d 812, 817 (¶9) (Miss. Ct. App. 2009) (emphasis added) (citing *Ivy v. State*, 792 So. 2d 319, 321 (¶4) (Miss. Ct. App. 2001)). In *Thomas*, the indictment listed the victim as "Arthur James," but "handwritten above James was 'A/K/A/ Jones.'" *Id.* at (¶8). The State moved to amend the indictment to change "Arthur James to Arthur Jones." *Id.* The prosecutor consulted the victim (who was outside the courtroom) and confirmed that his last name was Jones. *Id.* Thomas objected, but the trial court overruled his objection. *Id.* On appeal, this Court found "that a change of the name of the victim in an indictment goes to form not substance." *Id.* at (¶9) (citing *Ivy*, 792 So. 2d at 321 (¶4); *Burson v. State*, 756 So. 2d 830, 834 (¶14) (Miss. Ct. App. 2000)).

9

Thomas, like Clark, also cited *Carter* for the proposition that the State is required to prove the identity of the victim of an armed robbery. *Id.* at (¶10) (citing *Carter*, 965 So. 2d at 709 (¶17)), but this Court distinguished *Carter*, explaining there, "the State failed to produce two of the victims listed in the indictment and tried to amend the indictment to omit the reference to the names of these two victims." *Id.* In *Carter*, the State did not put the two victims on the witness stand. Here, the victim testified and clearly confirmed that she was the employee of Carnieceria Valdez who was robbed as the indictment alleged.

¶22. We find here that Clark's defense was not "compromised" by the omission of Alvaronda's name.[2] Again, "the primary purpose of an indictment is to **notify an accused of the charges against him** [and] to allow him to prepare an adequate defense." *Townsend*, 188 So. 3d at 620 (¶13) (quoting *Brown*, 944 So. 2d at 106 (¶8)). Clark was put on notice of the armed robbery of **Carnieceria Valdez**, the store that he and the other defendants chose to rob. The cash register taken was the property of the store, not of Alvaronda. The indictment identified the "staff" of the store as "the person or from the presence the personal property of another person" who was robbed as required by statute. Miss. Code Ann. § 97-3-79. Clark argues for this Court to hold that the birth name of the staff must be in the indictment for all essential elements to be present. We decline to do so, as the store owned

---

[2] The dissent argues that "an omitted victim's name is not the same as a mistaken victim's name." (Emphasis omitted). However, the facts of this case do not squarely match our existing precedent. While caselaw has allowed the amendment of a victim's name, no case has specifically stated that an indictment specifically required the use of a birth name. Victim **identification** is required, as the victim has to be a "person" under Mississippi Code Annotated section 97-3-79. Here, the victim was identified as a staff member of Carnieceria Valdez. Certainly, that denotes a "person" as required by the elements of armed robbery. Also, here—unlike the *Carter* case—the victim actually testified at trial.

10

the property that was stolen, and the identity of the victim was described in the indictment as being "from the person or from the presence of the staff thereof."[3] That staff testified at trial, and Clark was able to cross-examine her. We cannot find that Clark's substantive rights were violated here because the indictment was specific enough to inform him of the crime for which he was being tried.[4]

## CONCLUSION

¶23. Clark participated in an armed robbery of the Valdez store. Even though the birth name of the employee at the cash register was not included in the indictment, her "losses are the losses of h[er] employer[,]" the Valdez store. *Id.* The omission of her birth name from the indictment was one of form, not substance, especially when considering the indictment included the language "from the person or from the presence of the staff thereof." Further, there is no evidence that Clark's "substantive rights" were violated by the indictment's failure to allege the cashier's birth name, as she was identified as "staff" of the store that was robbed. Therefore, we affirm.

¶24. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WESTBROOKS, McDONALD AND EMFINGER, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., DISSENTS**

---

[3] It certainly may be the more prudent practice to include the name of the staff member in the indictment, but here, based on the language used in Clark's indictment, we cannot say an essential element was missing.

[4] *See also Ewing v. State*, 34 So. 3d 612, 616 (¶12) (Miss. Ct. App. 2009) (holding that an indictment was not deficient for failing to "describe the personal property that was allegedly taken from the victim," as the defendant was sufficiently put "on notice of the charge against him").

**WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, McDONALD AND EMFINGER, JJ.**

McCARTY, J., DISSENTING:

¶25. In coming to its overall conclusion today, the majority does two things. First, it overrules nearly two centuries of Supreme Court and Court of Appeals precedent by finding Clark's indictment is legally sufficient even though it lacks the name of the victim. Secondly, in disregarding these cases, the majority materially alters what has long been required as an essential element. But to take this path would be to declare that our statutes and Rules of Criminal Procedure no longer have binding effect, which I cannot support.

¶26. Mississippi law provides that "[e]very person who . . . feloniously take[s] or attempt[s] to take *from the person or from the presence* the personal property *of another* and *against his will* by violence *to his person* or *by putting such person in fear of immediate injury to his person* by the exhibition of a deadly weapon shall be guilty of robbery[.]" Miss. Code Ann. § 97-3-79 (Rev. 2020) (emphasis added). As the majority concedes, "the *essential elements* of armed robbery are: (1) a felonious taking or attempt to take, (2) *from the person or from the presence*, (3) the personal property of another, (4) against his will, (5) *by violence to his person or by putting such person in fear of immediate injury to his person* by the exhibition of a deadly weapon." *Jones v. State*, 281 So. 3d 137, 146 (¶26) (Miss. Ct. App. 2019) (emphasis added) (quoting *Oliver v. State*, 234 So. 3d 443, 445 (¶11) (Miss. Ct. App. 2017)).

¶27. As a result, our Court has previously held that "*the identity of the victim is an essential element of the crime of robbery.*" *Carter v. State*, 965 So. 2d 705, 709 (¶16) (Miss. Ct. App.

12

2007) (emphasis added).  And this point is pivotal because "it is important to remember that **robbery is *not* a crime against property but *is* a crime against the person**."  *Woods v. State*, 883 So. 2d 583, 588 (¶10) (Miss. Ct. App. 2004) (emphasis added) (citing *Towner v. State*, 812 So. 2d 1109, 1114 (¶23) (Miss. Ct. App. 2002)).  As a result, the robbery statutes' "***primary purpose* is to protect the safety and welfare of *individuals*** from the prospect of violence **against their persons**, albeit that the violence may occur as part of a scheme to deprive that person of his property."  *Id.*  (emphasis added).

¶28.    Indeed, since as early as 1852, our caselaw has rested on "a well settled rule, that indictments upon statutes, particularly of a highly penal character, must state *all the circumstances which constitute the definition of the offence in the act*, so as to bring the defendant judicially within it."  *Ike v. State*, 23 Miss. 525, 527 (1852) (emphasis added).  And that indictments "must also be clear and certain to every intent, *and pursue the precise and technical language employed in the statute in the description of the offence*."  *Id.* (emphasis added).

¶29.    *Carter* was built upon yet another longstanding "rule . . . that an indictment must state the name of the victim of an offense where that is an element of the offense, and a failure to state it, or a material variance between statement and proof is fatal, but an immaterial variance is not."  *Hughes v. State*, 207 Miss. 594, 603, 42 So. 2d 805, 807 (1949) (emphasis added) (internal quotation marks omitted).  "The well-recognized rule is that the use of the victim's name in an indictment implies that he is a human being," which can cover for a

13

failure "to charge that the victim was a human being."[5]  *Id.*

¶30.  But the majority attempts to contort *Carter* and *Hughes* to say that *completely omitting the identity of the victim* is "immaterial."  This contradicts the holdings and law in both of those cases.  An *omitted* victim's name is **not the same** as a *mistaken* victim's name.  If the Hinds County District Attorney had put the name of the victim as "Jake Smith" when it was "John Smith," it's possibly immaterial; it's certainly immaterial if it's "John Smit."  But without a name *at all*, we cannot pretend it's immaterial.[6]

¶31.  It is essential to fulfill our constitutional guarantee that a person who is accused "shall have a right . . . to be confronted by the witnesses against him[.]"  Miss. Const. art. 3 § 26 (1890).  How can we expect defendants to invoke their right of confrontation when they do not know *who* it is they are facing?

¶32.  This information is simply essential for due process.  This is why our Rules of Criminal Procedure codify the constitutional guarantee by establishing:

---

[5] Essentially, the Court in *Carter* and *Hughes* remained cognizant that a drafter of an indictment—usually a district attorney—might make a mistake, not that a drafter would intentionally omit an essential element of a charge.

So seventy-six years ago the Supreme Court refused to reverse an assault conviction in *Hughes* "because the indictment alleged that the offense was committed against Floyd Griffi**n** while the proof showed that the victim's name is Floyd Griffi**e**."  *Id*. (emphasis added).  This was an "immaterial variance," the Court determined.  *Id*.

[6] The whole point of listing the name of the victim is so a defendant can **adequately** and **fairly** prepare for trial.  He can check the background of the victim or find instances of bias or impeachment for cross-examination.  But it is also because our longstanding caselaw and *logic* require that the proof at trial match the indictment.  If an indictment can simply say "someone in the store" or "the staff thereof" as this case demonstrates, then the proof at trial can vary too widely to comport with due process and our constitutional requirements of notice.

> The indictment upon which the defendant is to be tried **shall** be a plain, concise and definite written statement of the **essential facts and elements** constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation.

MRCrP 14.1 (emphasis added). Even if we overrule the above cases, are we genuinely to conclude that the name of the victim is not an "*essential fact*" needed under our Constitution and our Rules of Criminal Procedure?

¶33. Over more than a century later, our Court as well as our Supreme Court have remained steadfast in this deep-rooted principle, just as the High Court was in 1852. But today, the majority all but dismantles that principle. Instead, the majority finds that Darren Clark "was put on notice of the armed robbery of **Carnieceria Valdez**, the store that he and the other defendants chose to rob[,]" reasoning that because "[t]he cash register was property of the store, not of Alvaronda" the indictment was legally sufficient. But *it was not the cash register* that "got really, really nervous" and "thought that was it" when the gun was pointed at Alvaronda's chest. Nor was it the Carnieceria Valdez, the store that Clark chose to rob. It was Alvara Alvaronda, a human being. The majority simply misses the point.

¶34. To completely fail to list a victim's name in the indictment does not comport with our precedent and Rules, and the conviction must be reversed. Because the indictment in this case is fatally flawed for failure to identify the victim and because the majority departs from decades of settled law in finding otherwise, I must respectfully dissent.

**WESTBROOKS, McDONALD AND EMFINGER, JJ., JOIN THIS OPINION.**

15